## MARYLAND CASUALTY CO. v. FOUTZ.

District Court, M. D. North Carolina. June 20, 1928.

1. Banks and banking ⬤⇒80(1)—Insolvent depository's surety, having paid bond, which, with dividends, satisfied state's claim, held entitled, under indemnity agreement, to participate with other creditors.

Surety on bond of bank as depository of state funds having paid amount of bond on bank's insolvency, which payment, with divi-

dends paid to state treasurer by bank's receiver, entirely satisfied state treasurer's claim, held entitled to prove its claim on bank's indemnity agreement and to share pro rata with other creditors for amount paid to state treasurer, in absence of any intervening equities, against any claim that this resulted in double payment of bank's debt.

2. Judgment ⬤⇒590(1)—Judgment denying surety's participation in dividends of insolvent depository held not res judicata against surety after creditor was fully paid.

Judgment that surety on bond of insolvent bank as depository of state funds was not entitled to subrogation to rights of state treasurer against bank, or to otherwise participate in the distribution of assets in receiver's hands, until state treasurer had been paid in full, held not res judicata in surety's subsequent action against receiver, on bank's agreement to indemnify it after entire claim of state treasurer had been satisfied.

In Equity. Suit by the Maryland Casualty Company against J. E. Foutz, receiver of the People's National Bank of Salisbury, N. C. Decree for plaintiff.

Manning & Manning, of Raleigh, N. C., and Craige & Craige, of Salisbury, N. C., for plaintiff.

Rendleman & Rendleman and Hayden Clement, all of Salisbury, N. C., for defendant.

HAYES, District Judge. On January 26, 1923, the plaintiff, Maryland Casualty Company, executed a bank depository bond, whereby it obligated itself to pay to Benjamin R. Lacy, treasurer of the state of North Carolina, the sum of $50,000, the condition of the bond being as follows:

"If the above-bound People's National Bank, Salisbury, N. C., shall well and faithfully pay over and upon demand of said Benjamin R. Lacy * * * all moneys belonging to the said Benjamin R. Lacy, personally or as treasurer, * * * all moneys which said Benjamin R. Lacy may, either personally or as treasurer of the state of North Carolina, deposit with said People's National Bank, Salisbury, N. C., which may in any manner come into its custody or possession while acting as said state depository, * * * then this obligation to be void."

The foregoing bond was executed by the surety by reason of a contract entered into between the bank and the surety company, which contract, among other provisions, contains this clause:

"That said applicant shall and will at all times indemnify, and keep indemnified

and save harmless, the said company from and against any and all liability asserted against said company, and from and against all loss * * * which said company shall or may for any cause, at any time, sustain, incur, or be put to, for or by reason or in consequence of said company's having executed said bond, and said applicant further covenants and agrees to pay to said company * * * all damages for which said company * * * shall become liable, by reason of said bond, before said company or its representatives shall be compelled to pay the same. * * * "

The bank became insolvent on June 8, 1923, and was closed by the Comptroller of the Currency, and J. E. Foutz was appointed Receiver. At that time Mr. Lacy had on deposit the sum of $89,579.14. Demand was made by Mr. Lacy on the Maryland Casualty Company to pay the penalty of the bond, and it paid him the sum of $50,000. Mr. Lacy filed his claim with the receiver for $89,579.14, the full amount of his deposit, and has received dividends which have entirely satisfied his claim, and the receiver now has in his hands $1,706.53 of dividends on this claim left over; the insolvent paying thus far a dividend of 50 per cent. to the unsecured creditors, and the receiver, in addition to this sum, has approximately $25,000 in his possession undistributed, and for which no dividends have been declared.

After the surety company paid Mr. Lacy the $50,000, it brought a suit against the receiver, asking that it be subrogated to his rights, and that it be permitted to prove its claim for $50,000 on its indemnity contract, and to restrain the receiver from paying any dividends to Mr. Lacy which would deprive it of the relief it sought. Mr. Lacy intervened. A decree was entered, denying the plaintiff the relief prayed for. An appeal was taken to the Circuit Court of Appeals and the decree was affirmed. That case is reported in 11 F.(2d) 71, 46 A. L. R. 852.

In the present case the receiver pleads the judgment roll in the former case as an estoppel, and alleges that all matters in controversy have been adjusted. There is no dispute about the facts. The opinion in the former case is founded on the proposition that the surety company is not entitled, by subrogation or otherwise, to participate in the distribution of the assets in the hands of the receiver until and unless Mr. Lacy has been paid in full, for that it would be inequitable to permit the surety to deplete the assets until Mr. Lacy had collected all of his claim. This same reason seems to be the basis of the opinion of the United States Supreme Court in the recent case of Jenkins v. National Surety Co., 48 S. Ct. 445, 72 L. Ed. ——, decided May 14, 1928.

[1] Since Mr. Lacy has received his claim in full, and is no longer interested in the distribution of the funds in the hands of the receiver, the equities applicable in the case last cited are not involved in this case. We are confronted with this question: Is the surety entitled to prove its claim against the receiver for the amount which it paid to Mr. Lacy? Is it inequitable, from the standpoint of the other general creditors of the People's National Bank, for the surety to assert this claim of indemnity? If the surety company had declined payment on its bond until the assets of the bank had been exhausted, the dividends actually paid by the receiver would have reduced the liability of the surety to the net sum of $48,293.47. Hence, when the surety company paid Mr. Lacy $50,000, it paid him $1,706.53 more than it should have paid, and this sum of $1,706.53 yet in the hands of the receiver is an unpaid dividend to Mr. Lacy, and should be refunded to the surety company, leaving its net loss on its bond at $48,293.47.

In the absence of any intervening equities, and in view of the express contract of indemnity executed by the bank to the surety company, I can see no valid reason why the surety company should be denied its right under the contract to prove its claim for the amount of its loss. The contract on the part of the bank with the surety company was a binding obligation on its part to repay whatever loss the surety might sustain. Such a debt seems as valid as a debt to the depositors who placed their money in the bank. The contract should be given full force and effect, and the courts should be slow to set such contracts at naught. If surety companies are denied redress on their indemnity contracts, where there are no intervening equities in favor of the obligor, the premiums upon such contracts will be materially increased, with the result that banks will be compelled to deposit collateral securities to secure the payment of public funds.

Nor does it seem to me that this results in double payment of a debt of the insolvent. When Mr. Lacy deposited his funds in this bank, two liabilities were created: (1) The liability to Mr. Lacy for the full amount of his deposit; and (2) the liability to the surety company for any sum which it might lose by reason of its suretyship, the exact

amount to be determined by the exact loss, if any, sustained. The amount of the surety's loss was not ascertainable until Mr. Lacy received all his dividends. In the payment of the last dividend, the receiver retained $1,706.53 otherwise payable to him, because the surety had already paid it to Mr. Lacy. The amount of the surety's liability thus became definitely fixed at $48,293.47. Since the receiver has funds in his hands available to pay the 50 per cent. dividends on this claim of $48,293.47, it seems to me that it is right, morally, equitably, and legally, for him to do so. The surety will thus get the same pro rata dividend of all other general creditors. Mr. Lacy only received from the receiver the same pro rata dividend. While it is true that the debt of the surety grew out of the same debt the receiver owed Mr. Lacy, at the same time it was a separate and distinct liability, becoming one only when the loss was sustained by the surety. See Mellette Farmers' Elevator Co. v. H. Poehler Co. (D. C.) 18 F.(2d) 430.

[2] Of course, this could not be true if Mr. Lacy had not been paid in full. But the receiver insists that the decree entered in the former case was a final adjudication of the matters involved here. On this question the court is of the opinion that the former litigation determined only that the surety company was not entitled to relief by subrogation or otherwise until Mr. Lacy had been paid in full. The gist of the former action was to restrain the receiver from paying anything to Mr. Lacy, and to require him to pay over any dividends pro rata to the surety, and it was virtually a suit between the plaintiff and Mr. Lacy, with the receiver merely a nominal party. When that suit was brought and determined, it was not known the amount of dividends the receiver would pay. It was not known whether any funds would be left in the hands of the receiver after Mr. Lacy had been paid in full. When Mr. Lacy received full satisfaction for his claim, and the exact amount of the loss of the surety company had been determined, it had a right to proceed on its indemnity contract against the receiver, which right it did not possess when the former case was disposed of. This holding seems to be in accordance with the opinion of the United States Supreme Court in Jenkins v. National Surety Co., supra. See this same case on this question, 18 F.(2d) 707, 709, decision by the Circuit Court of Appeals for the Eighth Circuit.

A decree may be presented in accordance with the views herein expressed.