## ICKES, SECRETARY OF THE INTERIOR, *v.* VIRGINIA-COLORADO DEVELOPMENT CORP.

No. 23. Argued October 16, 1934.—Decided June 3, 1935.

640

Assistant Attorney General Blair, with whom Solicitor General Biggs and Mr. H. Brian Holland were on the brief, for petitioner.

*Mr. Louis Titus,* with whom *Mr. Charles L. Frailey* was on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The Virginia-Colorado Development Corporation brought this suit to obtain a mandatory injunction against the Secretary of the Interior requiring him to vacate certain adverse proceedings and his decision declaring certain placer claims of the plaintiff to be void. Motion to dismiss the bill of complaint was denied and, on defendant's refusal to plead further, plaintiff obtained a decree which the Court of Appeals affirmed. 63 App. D. C. 47; 69 F. (2d) 123. This Court granted a writ of certiorari, 292 U. S. 620, in view of the question as to the construction of the Mineral Leasing Act, February 25, 1920, c. 85, 41 Stat. 437; 30 U. S. C. 181, 193.

The bill alleged that in June, 1917, under § 2324 of the Revised Statutes (30 U. S. C. 28), plaintiff located certain oil shale placer claims on mineral lands of the United States in Colorado and thereupon became the owner of the claims and entitled to their exclusive possession; that from that time until, and including, the year ending July 1, 1930, the annual assessment work required by the statute was performed on each of the claims; that during the year ending July 1, 1931, the assessment work was not performed and had not been resumed before September 4, 1931, or since, but that plaintiff then intended to resume work, and had made arrangements for that resumption which would have been had but for the action of defendant; that plaintiff had not abandoned, or intended to abandon, any of the claims and that no charge to that effect had been made; that about September 4, 1931, adverse proceedings were initiated by the Department of the Interior, through the General Land Office, with the filing of a " challenge " to plaintiff's title and right of possession and by " posting such challenge on the said claims "; that the challenge was based on the sole ground that plaintiff had not performed the annual assessment work and that " the United States resumed possession of said land."

Plaintiff further alleged that there had been " no relocation of any of the claims by any person since plaintiff's failure to perform the annual assessment work, and that there had been no application by anyone to lease any of the claims from the United States." Plaintiff recited the answer he had made to the challenge, in substance, that notwithstanding his failure to perform the described work, he had the right to retain possession of the claims and to resume work thereon " at any time prior to a valid subsequent location of said claims "; but that the Commissioner of the General Land Office had held that the claims were null and void, and his ruling had been af-

firmed by the Secretary of the Interior whose decision had been promulgated declaring that the United States had taken possession for its own purposes, thus in effect decreeing a forfeiture.

Plaintiff then set forth the provisions of the Mineral Leasing Act of February 25, 1920, which authorized the Secretary of the Interior to execute leases of mineral lands, but contained an exception as to valid claims existing on the date of the passage of the Act " and thereafter maintained in compliance with the laws under which initiated, which claims may be perfected under such laws, including discovery." [1]

1. The character and extent of the right which plaintiff acquired by virtue of its location of the mining claims, in 1917, are well established. Restating the rule declared by many decisions, we said in *Wilbur* v. *Krushnic,* 280 U. S. 306, 316, that such a location, perfected under the law, " has the effect of a grant by the United States of the right of present and exclusive possession. The claim is property in the fullest sense of that term." It is alienable, inheritable, and taxable. See *Forbes* v. *Gracey,* 94 U. S. 762, 767; *Belk* v. *Meagher,* 104 U. S. 279, 283; *Manuel* v. *Wulff,* 152 U. S. 505, 510, 511; *Elder* v. *Wood,* 208 U. S. 226, 232; *Bradford* v. *Morrison,* 212 U. S. 389,

---

[1] Section 37 of the Act of February 25, 1920, c. 85, 41 Stat. 437, 451 (30 U. S. C. 193) is as follows:

" Sec. 37. That the deposits of coal, phosphate, sodium, oil, oil shale, and gas, herein referred to, in lands valuable for such minerals, including lands and deposits described in the joint resolution entitled ' Joint resolution authorizing the Secretary of the Interior to permit the continuation of coal mining operations on certain lands in Wyoming,' approved August 1, 1912 (Thirty-seventh Statutes at Large, p. 1346), shall be subject to disposition only in the form and manner provided in this Act, except as to valid claims existent at date of the passage of this Act and thereafter maintained in compliance with the laws under which initiated, which claims may be perfected under such laws, including discovery."

394. Under § 2324 of the Revised Statutes (30 U. S. C. 28), the owner is required to perform labor of the value of $100 annually, but a failure to do so does not *ipso facto* forfeit his claim, but only renders it subject to loss by relocation. The law is clear " that no relocation can be made if work be resumed after default and before such relocation." Thus, prior to the passage of the Leasing Act of 1920, the annual performance of labor "was not necessary to preserve the possessory right, with all the incidents of ownership above stated, as against the United States, but only as against subsequent relocators. So far as the government was concerned, failure to do assessment work for any year was without effect. Whenever $500 worth of labor in the aggregate had been performed, other requirements aside, the owner became entitled to a patent, even though in some years annual assessment labor had been omitted." *Wilbur* v. *Krushnic, supra.*

There was authority in the Secretary of the Interior, by appropriate proceedings, to determine that a claim was invalid for lack of discovery, fraud, or other defect, or that it was subject to cancellation by reason of abandonment. *Cameron* v. *United States,* 252 U. S. 450, 460; *Cole* v. *Ralph,* 252 U. S. 286, 296; *Black* v. *Elkhorn Mining Co.,* 163 U. S. 445, 450; *Brown* v. *Gurney,* 201 U. S. 184, 192, 193; *Farrell* v. *Lockhart,* 210 U. S. 142, 147.

2. The Leasing Act of 1920 inaugurated a new policy. Instead of the acquisition of rights by location, the Act provided for leases. But by express provision, the Act saved existing valid claims " thereafter maintained in compliance with the laws under which initiated, which claims may be perfected under such laws." § 37.[2] What then was the status of plaintiff's claims under this exception? They were originally valid claims. No question is raised to the contrary. There is no suggestion of

---

[2] See Note 1.

lack of discovery, fraud or other defect. There is no ground for a charge of abandonment. The allegations of the bill, admitted by the motion to dismiss, dispose of any such contention. Plaintiff had lost no rights by failure to do the annual assessment work; that failure gave the government no ground of forfeiture. *Wilbur* v. *Krushnic, supra.*

How could the valid claims of plaintiff be " thereafter maintained in compliance with the laws under which initiated "? Manifestly, by a resumption of work. Plaintiff was entitled to resume, and the bill alleged that plaintiff had made arrangements for resumption, and that work would have been resumed if the Department of the Interior had not intervened. Plaintiff's rights after resumption would have been as if " no default had occurred." *Belk* v. *Meagher, supra.* Such a resumption would have been an act " not in derogation but in affirmance of the original location," and thereby the claim would have been " maintained." As we said in *Wilbur* v. *Krushnic, supra,* p. 318, " Such resumption does not *restore* a *lost* estate . . .; it *preserves* an *existing* estate."

In this view, plaintiff came directly within the exception. The Government invokes the new policy of the Leasing Act abolishing the practice of location. But the saving provision of § 37 is a part of the policy of the Act. Its terms explicitly declare the will of Congress as to valid existing claims, with full understanding of the status of such claims under the prior law.

The Government refers to the reservation in the opinion in *Wilbur* v. *Krushnic, supra,* as to the maintenance of a claim by a resumption of work " unless at least some form of challenge on behalf of the United States to the valid existence of the claim has intervened." But that was a reservation, not a decision, and it does not aid the Government in its contention here. To be effective, the

" challenge " to the " valid existence " of a claim must have some proper basis. No such basis is shown.

We think that the Department's challenge, its adverse proceedings, and the decision set forth in the bill went beyond the authority conferred by law. The decree is

*Affirmed.*