**GABBS EXPLORATION COMPANY,**
**Appellant,**

**v.**

**Stewart L. UDALL, Secretary of the Interior.**

**No. 16803.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 31, 1962.

Decided Feb. 14, 1963.

Petition for Rehearing En Banc Denied
En Banc March 26, 1963.

Mr. Frederick Bernays Wiener, Washington, D. C., with whom Mr. Fred H. Evans, Salt Lake City, Utah, was on the brief, for appellant.

Mr. Thomas L. McKevitt, Atty., Dept. of Justice, with whom Asst. Atty. Gen. Ramsey Clark, and Messrs. Roger P. Marquis and Harold S. Harrison, Attys., Dept. of Justice, were on the brief, for appellee. Mr. S. Billingsley Hill, Atty., Dept. of Justice, also entered an appearance for appellee.

Before WILBUR K. MILLER, BASTIAN and BURGER, Circuit Judges.

BASTIAN, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing plaintiff's [appellant's] complaint for declaratory judgment and for "relief in the nature of mandamus." The plaintiff sought a judgment declaring invalid two contest proceedings involving property hereinafter referred to; a judgment that the decisions of defendant's [appellee's] predecessor cancelling certain mineral entries are null and void; a judgment enjoining defendant from rejecting plaintiff's applications for patents; and a judgment directing defendant to determine the right of plaintiff to patents for certain mining claims, without regard to the contests.

On July 24, 1918, plaintiff's predecessor in title located eight oil placer claims in Rio Blanco County, Colorado (Mullins claims). On March 30, 1929, the then Secretary of the Interior instituted against the record owners of these claims a contest, No. 11977, in which it was charged:

"2. That there has not been expended upon each and every one of the claims labor and improvements of a reasonable value of $100 for the assessment years ending July 1, 1921, to July 1, 1928, inclusive, and the claims have been abandoned."

The record owners were served with the contest notice, but they filed no objection and, in fact, made no appearance. Thereafter, on June 5, 1929, the Commissioner of the General Land Office, with the approval of the Secretary of the Interior, declared the contested oil shale locations null and void, and notified the contestees accordingly. No further action appears to have been taken until April 14, 1956, when plaintiff purchased, by quitclaim deed, the mining claims in question. Thereafter, plaintiff made applications for patents on all of said claims, which were duly rejected.

The second cause of action set forth in the complaint is known as the Sibbald-Coral claims. In December 1917 and February 1918, plaintiff's predecessor in title located eighteen oil placer claims in Garfield County, Colorado. On December 31, 1929, defendant's predecessor in office caused a contest, No. 12111, to be instituted against the record owner of the said claims, in which it was charged:

"1. That there has been no assessment work performed upon any of the above described placer mining claims for the assessment years ending July 1, 1921, up to and including July 1, 1929.

"2. That each and every one of said claims has been abandoned."

On January 13, 1930, the record owner of the claims was served a copy of the contest notice but failed to file an answer within the time allowed by the regulations of the Department of the Interior governing contests. Accordingly, on May 19, 1930, the Commissioner of the General Land Office, with the approval of the Secretary of the Interior, declared the contested oil shale locations null and void, and the contestee was duly notified. On March 21, 1956, plaintiff purchased, by quitclaim deed, the mining claims in question and duly applied for a patent covering all said claims. The

application was rejected, after which the present suit was instituted.

On cross-motions for summary judgment, the District Court entered judgment granting defendant's motion for summary judgment and denying that of plaintiff, and dismissed the complaint. This appeal followed. We affirm the judgment of the District Court.

Plaintiff's case is pitched largely on three grounds. It argues that the proceedings resulting in the cancellation of the claims were null and void, first, because the Supreme Court has held that a charge of failure to perform assessment work may not be a basis for declaring unpatented mining claims invalid;[1] second, because the Secretary of the Interior lacks authority to declare unpatented mining claims invalid by reason of abandonment; and finally, because, even if the Secretary does have such authority, the charges of abandonment in this case are invalid since they were not supported by an allegation of the particular facts constituting abandonment, as required under the rules of the Department of the Interior.

It is true that the Supreme Court did hold that failure to perform assessment work may not be the basis for holding unpatented mining claims invalid; however, this does not affect the charge that plaintiff's mining claims had been abandoned. The two charges are separate and distinct. And we find no merit in the contention that the Secretary lacked authority to cancel the mining claims by reason of abandonment. In fact, in Ickes v. Virginia-Colorado Development Corp., 295 U.S. 639, 55 S.Ct. 888 (1935), one of the cases relied upon by plaintiff and having to do with the charge of failure to perform assessment work, the Supreme Court said:

"There was authority in the Secretary of the Interior, by appropriate proceedings, to determine that a claim was invalid for lack of dis-covery, fraud, or other defect, *or that it was subject to cancellation by reason of abandonment.*" 295 U.S. at 645, 55 S.Ct. at 889. [Emphasis supplied.]

Plaintiff contends that this expression, quoted from Mr. Chief Justice Hughes's opinion, is *obiter dictum.* We are unable to say that that is the case, because it seems to us that the quoted language was in fact material to the decision. Assuming it was *dictum,* however, we recognize the fact that, although a decision of an appellate court is controlling only to the extent of the actual facts involved, and an expression as to the law based on other facts is regarded as *dictum* and not controlling on lower courts, such *dictum* certainly deserves serious consideration. That, indeed, is the general rule in federal courts.

"If these conclusions were dicta, it does not necessarily follow that they were wrong, and certainly dicta of the United States Supreme Court should be very persuasive." Fouts v. Maryland Casualty Co., 30 F.2d 357, at 359 (4th Cir., 1929), reversing Maryland Casualty Co. v. Foutz, 4 Cir., 27 F.2d 423, cert. denied, Maryland Casualty Co. v. Fouts, 279 U.S. 852, 49 S.Ct. 348, 73 L.Ed. 995 (1929).

"The considered dicta of a court of last resort are entitled to the respectful recognition of inferior courts within the same judicial system." United States v. Roemig, 52 F.Supp. 857, at 861 (N.D.Iowa 1943).

"It [the quotation] declares the view of the court [United States Supreme Court] and has strong persuasive influence on the lower courts." International Ry. Co. v. Davidson, 65 F. Supp. 58, at 59 (W.D.N.Y.1945).

The owners of the Mullins and the Sibbald-Coral claims were not denied due process in the original contests, for it is clear that they had adequate notice

---

1. Ickes v. Virginia-Colorado Development Corp., 295 U.S. 639, 55 S.Ct. 888, 79 L. Ed. 1627 (1935); Wilbur v. United States ex rel. Krushnic, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445 (1930).

of the contest against them, they were offered a hearing, and they were informed of the cancellation of their claims. In view of what we have previously stated, there was no jurisdictional defect in the 1929 contests. The only defect that plaintiff can point to in those initial contests is the failure of the complaint to allege the facts of abandonment and the lack of supporting affidavits. Plaintiff urges that these defects render the original judgments void. We do not think so.

■ Plaintiff's predecessors in interest might have corrected these errors or defects, if errors or defects there were, by timely appeal to the Secretary of the Interior from the decision of the Commissioner of the General Land Office. As timely appeal was not taken then, it is now too late for plaintiff to seek to correct any errors or defects by collateral attack.

None of the cases cited by plaintiff[2] bear out its position that the alleged defects in the 1929 proceedings rendered those proceedings void. All of those cases were timely appeals from decisions of the Commissioner of the General Land Office. Two of the cases do not even involve the question of abandonment;[3] and the remaining cases involve the question whether a good and sufficient affidavit of contest had been filed, or whether a demurrer to a complaint of abandonment which alleged no facts and contained no affidavit should have been sustained. The latter cases show that a demurrer to the original complaints herein might have been sustained, but do not show that the judgments were void. Plaintiff's predecessors not only did not interpose a demurrer, but failed to appeal from the decision against them. Any defect could have been and should have been cured upon appeal. Because of the policy of the Department of the Interior to allow amendments to the complaint freely, there is all the more reason why plaintiff's predecessors should have sought immediate review of the original determination.[4] As it was not done then, it should not be done now by collateral attack where no jurisdictional defect appears which justifies overturning a settled decision.[5]

■ Plaintiff points out that so long as the Department of the Interior retains jurisdiction over the land in question, prior departmental decisions are not strictly *res judicata*. Of course, this is correct, for there have been cases in which the Secretary of the Interior has reopened prior decisions in order to correct error. E. g., West v. Standard Oil Co., 278 U.S. 200, 49 S.Ct. 138, 73 L.Ed. 265 (1929). Plaintiff argues that, since the Secretary has retained jurisdiction over the disputed land in this case, it follows ineluctably that he must reopen the 1929 decisions and correct any errors there appearing. The premise does not beget the conclusion.

We need not consider whether the power to reopen prior decision is merely discretionary with the Secretary[6] or whether, indeed, the errors urged by plaintiff demonstrate that "manifest injustice has been done or the law clearly misapplied."[7] as is required for reopening. Even if we assume that Gabbs has met these threshold objections, plaintiff's argument cannot prevail. The Department of the Interior, which has recognized the right of the Secretary to reconsider certain prior decisions,[8] has also

2. Fosdick v. Shackleford, 47 L.D. 558; Raber v. Smith, Leight, Intervener, 51 L.D. 46; Roark v. Tarkington, McCracken, Intervener, 51 L.D. 183; The Shale Oil Company, 55 I.D. 287; J. C. Nelson, et al., 64 I.D. 103.

3. The Shale Oil Company; J. C. Nelson, et al.; both supra note 2.

4. Fosdick v. Shackleford, supra note 2.

5. Cf. 3 Freeman, Judgments, § 1297 (5th ed. 1925).

6. Johnnie E. Whitted, Bill Smith, 61 I.D. 172.

7. Parcher v. Gillen, 26 L.D. 34, at 43.

8. Gage v. Atwater, 21 L.D. 211; Osborn v. Knight, 23 L.D. 216; Parcher v. Gillen, supra note 7; Cagle v. Mendenhall, 26 L.D. 177; Seixas v. Glazier, 26 L.D.

recognized that there must be some time limit on such reconsideration. As Assistant Attorney General Van Devanter said in Aspen Consolidated Mining Co. v. Williams, 27 L.D. 1, at 11:

"The parties remain the same and the one complaining of the former decision has taken timely and decisive action to have the alleged wrong corrected."

Here neither plaintiff nor its predecessors in interest took timely action to have the wrong righted, and plaintiff cannot complain of the Secretary's failure to reopen the case. It is significant also that in all the cases cited to us in which a prior decision was reopened the longest period elapsing before reconsideration was three years. Here twenty-seven years have elapsed between the alleged wrong (1929) and plaintiff's attempt to have it corrected (1956). There might be some reason to impel the Secretary to reopen a prior decision in order to purge an incorrect determination, but the passage of time might prevent or greatly hinder a proper determination of the initial question, in which case it would be inappropriate for him to reopen the case even though he retains jurisdiction over the land in dispute. This is such a case, for it is now difficult, if not impossible, for the Secretary to determine the facts as to the original abandonment in 1929. Further, nowhere does plaintiff offer any facts showing that its predecessors in interest had *not* abandoned the claims in 1929. This is certainly not a case in which the court should order reopening of the initial contest. Nothing in West v. Standard Oil Company, supra, casts the slightest doubt on this conclusion.

It follows that the judgment of the District Court must be and is

Affirmed.

49; Aspen Consolidated Mining Co. v. Williams, 27 L.D. 1; Ernest B. Gates (on rehearing), 41 L.D. 384; Howard A. Robinson, 43 L.D. 221; The Shale Oil Company, supra note 3; Earl C. Presley,

David Esplin, et al., Interveners, is distinguishable since the case did not involve reconsideration of a prior adjudication, but rather the impropriety of the original granting of a license.