The OIL SHALE CORPORATION and
Energy Resources Technology Land,
Incorporated, Plaintiffs,

v.

Stewart L. UDALL, Secretary of the
Interior, Defendant.

Joseph B. UMPLEBY and Wasatch Development Co., Plaintiffs,

v.

Stewart L. UDALL, Secretary of the
Interior, Defendant.

Barnette T. NAPIER, Grace A. Savage,
Joan L. Savage, Maude B. Farnum, St.
Clair Napier Catlin, William H. Farnum, Jr., John R. Farnum, John W.
Savage, and Neil S. Mincer, Plaintiffs,

v.

Stewart L. UDALL, Secretary of the
Interior, Defendant.

Penelope Chase BROWN, individually and
as trustee, and the Oil Shale Corporation, Plaintiffs,

v.

Stewart L. UDALL, Secretary of the
Interior, Defendant.

Civ. A. Nos. 8680, 8685, 8691, 9202.

United States District Court
D. Colorado.

Dec. 21, 1966.

See also, D.C., 235 F.Supp. 606.

Tweedy, Mosley, Aley & Young, Denver, Colo., for plaintiffs in Civil Actions Nos. 8680 and 9202, Cleary, Gottlieb, Steen & Hamilton, New York City, of counsel.

Fred M. Winner, Denver, Colo., of counsel, in Civil Action No. 8680.

Edward N. Juhan, Fred M. Winner, William S. Livingston, Denver, Colo., for plaintiffs in Civil Action No. 8685.

Schmidt & Van Cise, Richard L. Eason, Denver, Colo., for plaintiffs in Civil Action No. 8691.

Lawrence M. Henry, U. S. Atty. for Dist. of Colorado, David I. Shedroff, Asst. U. S. Atty., Denver, Colo., Thomas L. McKevitt, Atty., Dept. of Justice, Washington, D. C., for defendant, Robert W. Mesch, and Lowell Madsen, Attys., Office of Regional Sol., Dept. of Interior, Denver, Colo., of counsel.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

The four above-named actions arise under the Constitution and laws of the United States. Plaintiffs in all four actions seek an adjudication that certain decisions of the Department of the Interior, hereinafter the Department, regarding oil shale placer mining claims in Colorado are erroneous, invalid and without force and effect. Plaintiffs in Civil Action Nos. 8685, 8691 and 9202 seek mandatory orders to compel the Department to issue patents on several placer claims pursuant to certain applications filed by plaintiffs. Plaintiffs in Civil Action No. 8680 have not filed a patent application, but seek a declaratory judgment regarding their alleged rights to gain patents from the Department on several of the Colorado oil shale mining claims. The trial was to the Court. Extensive trial and post-trial briefs have been filed, voluminous exhibits have been received in evidence, and oral arguments have been presented. The case now stands submitted.

There are few factual disputes. Most of the controversy concerns the policies of the Department and certain Supreme Court decisions relating to extensive oil shale reserves in Colorado, Utah and Wyoming. For the sake of clarity, the position of the plaintiffs in each of the consolidated cases will be summarized at the outset. The specific facts surrounding the claims in the several actions are related so as to clarify the issues and furnish basis for the decisions.

*Civil Action No. 8680*

Plaintiffs, The Oil Shale Corporation and Energy Resources Technology Corporation, Inc. are, respectively, Nevada and Colorado corporations. Energy Resources allegedly owns certain oil shale mining claims, referred to as the Group A Bute Claims (officially entitled Bute Placer Mining Claims Nos. 1–19, inclusive, 21–28 inclusive, and 30–32 inclusive). The Oil Shale Corporation allegedly owns the Group B Bute Claims (officially entitled Bute Placer Mining Claims Nos. 33–48, inclusive), the Camp Bird Claims (officially entitled Camp Bird Placer Mining Claims Nos. 1–20, inclusive) and the Atlas Claims (officially, the Atlas Placer Mining Claims Nos. 1, 2, 3, 7, 9, 10, 12, 17, 18). All of these claims are located in Rio Blanco County, Colorado; all allegedly contain valuable oil deposits.

Plaintiffs trace their interests in these claims through one Tell Ertl who, during the 1950's, acquired them from the original claimants and their successors in interest by purchase and forfeiture proceedings under Title 30 U.S.C. § 28. Hamilton v. Ertl, 146 Colo. 80, 360 P.2d 660 (1961). All of the claims were allegedly located by the original claimants during December, 1919 and January, 1920. Thus they predate enactment of the Mineral Leasing Act of February 25, 1920, 41 Stat. 437, Title 30 U.S.C. § 181 et seq. This act changed the mining law policy in that certain mineral lands were withdrawn from location.

In 1927, the Department instituted certain contest proceedings, Contest Nos. 11,757, 11,759 and 11,761 against the original claimants regarding the above mining claims. On May 4, 1928, the Commissioner, General Land Office, issued letter decisions declaring the claims null and void for the failure of the named contestees to appear upon notice and process purportedly served and answer charges alleging their failure to perform annual assessment work for the years ending July 1, 1921 to 1927, inclusive, as required by 30 U.S.C. § 28.

Plaintiffs contend that the Supreme Court has, on two occasions, held that the Department lacked authority to declare mining claims null and void for failure to perform annual assessment work. Wilbur v. United States ex rel. Krushnic, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445 (1930); Ickes v. Virginia-Colorado Development Corporation, 295 U.S. 639, 55 S.Ct. 888, 79 L.Ed. 1627 (1935). Their further contention is that in any event the contestees were not given proper notice of the contest proceedings. They allege that following the Supreme Court's decisions in Wilbur v. United States ex rel. Krushnic, supra, and Ickes v. Virginia-Colorado Development Corporation, supra, the defendant's predecessors in office and various officials and employees of the Department repeatedly and publicly affirmed that the decisions in the assessment work contest proceedings, including Contests Nos. 11,757, 11,759 and 11,761, were null and void; that from 1935 until 1962, the defendant and his predecessors in office issued land patents covering at least 74,000 acres of oil shale claims which had been declared null and void in assessment work proceedings such as those here involved, and which were in all respects of fact and law the same as the mining claims referred to above in which plaintiffs allege to have an interest. Plaintiffs argue that by reason of these acts the Department has adopted a rule of law, which cannot be retroactively altered, that the assessment work contests had no effect on the validity of mining claims. It is further alleged that the plaintiffs and their predecessors in interest have relied upon the rule of law purportedly adopted by the Department.

In 1962, plaintiff Energy Resources and others applied for patents on certain mining claims which had been the subject of departmental contest proceedings during 1930–1933 involving issues identical to those raised in Contest Nos. 11,757, 11,759 and 11,761. On February 16, 1962, the Manager of the Colorado Land Office, Bureau of Land Management, issued an opinion rejecting the applications on the ground that while the original

cancellations may have been erroneous as a matter of law at the time they were made, the principles of finality of administrative action, estoppel by adjudication, and *res judicata* prevent their now being challenged and consequently bar the patenting of such claims. The Manager's decision was affirmed by the Solicitor of the Department on April 17, 1964. Union Oil Company of California, et al., 71 I.D. 169 (1964). The plaintiffs assert that they have exhausted their administrative remedies and that the case is now ready for judicial review. They seek a mandatory injunction compelling the Department to expunge from Department records any decisions, orders, judgments or cancellations entered with respect to the mining claims of plaintiffs in Contests Nos. 11,757, 11,759 and 11,761. They also seek a declaratory judgment declaring such contest proceedings to be of no effect, and an injunction barring the Department from relying upon them to bar their patent applications, and any further relief appropriate.

*Civil Action No. 8685*

Plaintiffs Umpleby, a Texas citizen, and Wasatch Development Company, a Colorado corporation, seek similar relief in regard to certain mining claims in Garfield County, Colorado, known as the Carbon and Elizabeth claims. Plaintiff Umpleby is a successor in interest from the original claimants and the alleged owner of an undivided thirteen and one-half per cent interest in the unpatented Carbon Nos. 1 through 6 and Elizabeth Nos. 1 through 12 oil shale placer mining claims. Plaintiff Wasatch Development Company is a successor in interest from the original claimants and the alleged owner of an undivided eighty-six and one-half per cent interest in these claims. The claims were allegedly located in 1918, prior to the enactment of the Mineral Leasing Act.

These claims were also the subject of a contest proceeding, Contest No. 12029, initiated by the Department against Umpleby and others in 1929, in which they were declared invalid for failure to per-

form annual assessment work. On September 8, 1959, plaintiffs filed application for mineral patent (Colo. 030979) on the Carbon Nos. 1 through 4 and Elizabeth Nos. 1, 2, 4 through 12 claims. In Union Oil Company of California, et al., supra, the Land Office Manager's rejection of this patent application was affirmed by the Solicitor. Plaintiffs make assertions similar to those made by plaintiffs in Civil Action No. 8680. They seek a declaration that the *Union Oil Company* decision is void because of the Supreme Court's decisions in Wilbur v. United States ex rel. Krushnic, supra, and Ickes v. Virginia-Colorado Development Corporation, supra, and the Department's subsequent affirmance thereof, and pray for a mandatory injunction compelling the Department to take such action as is necessary to issue patents to them.

### Civil Action No. 8691

In this action, plaintiffs Napier and Grace Savage are California citizens, and plaintiffs Joan Savage, M. B. Farnum, Catlin, W. H. Farnum, J. R. Farnum, John Savage and Mincer are Colorado citizens. Plaintiffs are successors in interest and the alleged owners of three oil shale placer mining claims in Garfield County, Colorado, known as the Northwest, Northeast and Southeast claims. These claims were allegedly located by plaintiffs' predecessors in 1918, prior to the enactment of the Mineral Leasing Act. They also were the subject of a contest proceeding, Contest No. 12972, initiated by the Department in 1931, wherein the claims were declared invalid for failure to perform annual assessment work. On June 1, 1959, the plaintiffs applied for a patent on the claims involved here. This application was also rejected by the Manager of the Colorado Land Office and affirmed by the Solicitor, Union Oil Company of California, et al., supra. Plaintiffs also contend that this decision is contrary to law and the settled practice of the Department. They seek a mandatory injunction compelling the Department to take such action as is necessary to issue the patents

applied for, and a judgment declaring the departmental decisions adversely affecting their claims to be null and void, and other appropriate relief.

### Civil Action No. 9202

Plaintiff Brown is a Colorado citizen, and is the successor in interest and the alleged owner of certain oil shale placer mining claims in Garfield County, Colorado, known as the Oyler claims (officially the Oyler Oil Shale Placer Mining Claims Nos. 1–4). Plaintiff The Oil Shale Corporation is a Nevada corporation holding a lease and option to purchase the Oyler claims. The Oyler claims were allegedly located in 1916, prior to the enactment of the Mineral Leasing Act. They too were the subject of departmental investigations and contest proceedings prior to the Supreme Court's decision in Ickes v. Virginia-Colorado Development Corporation, supra. The Department concluded from an investigation in 1918 that the claims had been properly located. A second investigation in 1920 affirmed the continued validity of the claims. In 1929, a contest proceeding, Contest No. 12039, similar to those discussed above, resulted in a declaration invalidating the claims for failure to perform annual assessment work. In 1948, the sole surviving directors of the then record title holder of the claims, the Index Shale Oil Company, a dissolved corporation, conveyed the claims to plaintiff Brown and her husband. In 1955, the Browns conveyed the claims to the Pacific Oil Company, which filed a patent application in September of the same year, Colorado No. 012327. This application was also rejected by the Manager of the Colorado Land Office on February 16, 1962, and affirmed by the Solicitor in Union Oil Company of California, et al., supra. Apparently as a result of the Land Office Manager's decision in 1962, the Pacific Oil Company reconveyed the claims to plaintiff Brown. The lease-option agreement with plaintiff The Oil Shale Corporation was executed thereafter. Plaintiffs here make the same assertions and seek similar relief to that asked by plaintiffs in Civil Action No. 8680.

In summary, the plaintiffs assert at least three separate and independent reasons for according the relief sought in these consolidated actions:

1. The 1928–1933 contest proceedings of the Department are void for lack of jurisdiction and can give no basis for the *Union Oil* decision on any theory.

2. In 1935, the Department adopted a rule that the 1928–1933 contest decisions would be regarded as void and without force and effect and this rule cannot be reversed retroactively.

3. Even if the 1928–1933 decisions are regarded as merely erroneous, but supported by subject matter jurisdiction, the plaintiffs in the circumstances above described can now seek direct review and obtain their reversal.

*The Assessment Work Issue: Departmental View Prior to the Krushnic and Virginia-Colorado Decisions*

The Department's broad power over the public lands gives it an undisputed jurisdiction over most aspects relating to the validity of mining claims, e. g., marking of claims, discovery, mineral character of the land, particularly when a patent application has been filed. Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659 (1920); Best v. Humboldt Placer Mining Company, 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963). In view of the scope of its acknowledged powers, the Department has, in recent decades, been reluctant to accept the proposition that it lacks power to question the sufficiency of assessment work performance in order to take possession of claims for the Government where such work is in default.[1] Under the mining laws, the penalty for failure to do assessment work traditionally has

been that other *private* parties are empowered to enter onto the lands and relocate the claim. E. g., Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735, 736 (1881); Swanson v. Sears, 224 U.S. 180, 32 S.Ct. 455, 56 L.Ed. 721 (1912); Knight v. Flat Top Mining Co., 6 Utah 2d 51, 305 P.2d 503 (1957). Where there are co-owners to a mining claim, one co-owner can, by performing assessment work where the others do not, obtain complete ownership of the claim through forfeiture proceedings under 30 U.S.C.A. § 28. Hamilton v. Ertl, supra. In recent years, the Department has asserted its thesis that relocation for assessment work default is also a remedy available to the Government, and within its jurisdiction. But this has not always been its position.

In an early decision, P. Wolenberg, et al., 29 L.D. 302 (1899), the Secretary of the Interior recognized that the Department had no jurisdiction under the pre-Mineral Leasing Act mining laws to inquire into a charge of failure to perform assessment work. The Secretary reviewed the action of the Land Office Commissioner in ordering a hearing to determine whether annual assessment work had been performed on a contested claim. In vacating the order for a hearing on this question the Secretary made the following comments:

"Ordinarily an order of your office directing a hearing, being an interlocutory proceeding, will not be disturbed upon appeal. Indeed, generally speaking, such an order is not appealable. This rule, however, is not without exception, and where it is made to appear that the order involves matters which the land department can not *inquire into* * * * the same may be considered and corrected or wholly vacated

1. That a distinction has been made between the Department's power to invalidate claims for non-performance of assessment work and its power to do so for other defects is illustrated by the following extract from The Federal Shale Oil Company, 53 I.D. 213, 216 (1930):

"Putting aside for the moment the question, whether departmental authority exists to attack mining claims for fail-

ure to do annual work, it can not be disputed that such authority exists to determine whether a valid claim was initiated prior to the date of the act by doing the acts the mining law prescribed, such as marking the boundaries so that they might be readily traced, making a discovery of mineral prior to the act, or thereafter as a result of work diligently in prosecution at its date.

when brought to the attention of the Department, whether by direct appeal or otherwise.

"In the present case the order for a hearing, in so far as it directs an *inquiry* into the charge of failure to make an expenditure of one hundred dollars, in labor or improvements, on the Mascot claim during the year 1896, and the alleged relocation of the claim by reason thereof, clearly relates to matters over which the land department is *without authority*. The annual expenditure of one hundred dollars, in labor or improvements, required by section 2324 of the Revised Statutes, is solely a matter between rival and adverse claimants to the same mineral land, and goes only to the right of possession, the determination of which is committed to the courts, and not to the land department. In this respect the requirement made by section 2324 is essentially different from that made by section 2325, which makes the expenditure of five hundred dollars, in labor or improvements, a condition to the issuance of patent, and therefore a matter between the applicant for patent and the Government, the determination of which is committed to the land department. * * *

"The action of your office in *ordering a hearing* to determine whether the annual assessment work for 1896 had been done upon the Mascot, and, if not, whether work upon that claim had been resumed before the alleged relocation thereof, was erroneous." 29 L.D. at 303–04.

See also Barklage et al. v. Russell, 29 L.D. 401 (1900); Nielson v. Champagne Mining & Milling Co., 29 L.D. 491 (1900); Cain et al. v. Addenda Mining Co. (On Review), 29 L.D. 62 (1899).

Following these early decisions the Department took a different view in cases involving the right of mining claimants to lands subsequently withdrawn or reserved from mining locations. Thus, in Navajo Indian Reservation, 30 L.D. 515 (1901), the Department held that a valid mining location subsisting at the time of the reservation of lands as an Indian Reservation was excepted from the effect of the withdrawal and that such claim was subject to relocation upon failure of the original claimant to perform annual assessment work. The Secretary refused to determine whether the original locators had defaulted, and whether the alleged relocators had succeeded to their rights, holding this to be a matter for the courts. However, he did consider the effect of the withdrawal upon the subsequent default of prior claims. Depending upon how the reservation was worded, the Secretary concluded, it might attach upon default of an existing claim so as to prevent relocation or it might never attach, regardless of the subsequent default. If, for example, the reservation did not flatly *exclude* the prior claims, but merely exempted them for so long as they are properly "maintained," a default in such "maintenance" would bring the land under the withdrawal and hence under the control of the Government.

The effect of a withdrawal under the reclamation act for irrigation works, 32 Stat. 388, was considered in a Departmental Instruction dated January 13, 1904, 32 L.D. 387. The Secretary noted that an unperfected mining claim is merely a possessory right which is liable to be divested for failure to maintain the claim in accordance with the mining laws and local regulations applicable thereto. He then stated that the land department has jurisdiction to determine whether the claimant has defaulted and to declare by its judgment whether such right has been divested so as to restore the land to the control of the Government. A decade later, in E. C. Kinney, 44 L.D. 580 (1916), this principle was followed to support the asserted jurisdiction of the Department to determine whether placer mining claims on withdrawn lands were subsequently defaulted for failure to perform annual assessment work. In refer-

ring to the January 13, 1904, Instruction, the Assistant Secretary said:

"This is undoubtedly the true rule, for where a claimant is in default so that his claim could be defeated by another individual adverse claimant, surely the Government, desiring to devote the land to an important public use, may likewise take advantage of the default and divest the claim so as to free the land for Government use." 44 L.D. at 582.

As has been mentioned, the Mineral Leasing Act of 1920 instituted a new policy with respect to certain minerals, including oil shale, by withdrawing them from location and patent. After its enactment, many prior locators ceased doing annual assessment work on claims for minerals included under the Act on the ground that if such claims could no longer be located, neither could they be relocated. An investigation by the Department after the enactment of the Leasing Act showed that work had stopped on many claims. Many contests were initiated alleging that failure to perform the work resulted in forfeiture of the claims to the United States. In bringing these contest proceedings the Department took the position that its jurisdiction to inquire into the validity of mining claims was enhanced by the new policy propounded by the Act. The Department reasoned that the provision of Section 37 of the Act, excepting from its coverage valid existing claims thereafter "maintained in compliance with the laws under which initiated," impliedly gave the Secretary the authority to determine what lands are subject to lease and what lands are within the exception of valid claims. In the Department's view, maintenance "in compliance with the laws under which initiated" included the performance of annual assessment work; hence, the Secretary's implied authority to determine what claims fell within the exception necessarily gave him jurisdiction to invalidate claims for nonperformance of such work.

## The Supreme Court Decisions

The leading Department case enunciating this viewpoint was Emil L. Krushnic, 52 L.D. 295 (1929). There, the petitioner's application in 1922 for patent to certain oil shale placer claims was denied for failure to perform assessment work during 1920, although he had resumed such work in 1921 and 1922. The Commissioner ruled that to maintain a claim "in compliance with the laws under which initiated means, among other things, the performance of $100 worth of annual labor and improvement prescribed by section 2324, Revised Statutes * * *," and that failure to fulfill this requirement *automatically* terminated the claim and rendered it subject to disposition only under the Leasing Act. In affirming the Commissioner the Secretary emphasized the automatic nature of the termination upon default in performing the yearly labor.

"Section 37 [of the Leasing Act] at one blow destroyed the right of relocation of such minerals and with it fell the right of resumption. * * * The fair and obvious meaning of section 37 is that if the annual work is not done, all the rights of the claimant *are* gone."

\* \* \* \* \* \*

"The contention that the Federal Government must act the part of an adverse claimant in this and similar cases and be alert and vigilant and take some affirmative action to terminate the rights of a defaulting claimant before he resumes work, such as by physical reentry, or institution of adverse proceedings in the department or by bringing an ouster suit in the courts, is untenable." 52 L.D. at 297, 301–03.

Since he viewed the forfeiture to be automatic, immediately vesting the Government with complete control and ownership of the land, the Secretary was able to distinguish between the Department's jurisdiction under the general mining laws to settle disputes over assessment work performance between private adverse claimants and its jurisdiction un-

der the Leasing Act to invalidate claims on its own initiative for failure to perform the annual labor.

> "The situation here is entirely different. The leasing act, as stated, repealed as to shale deposits the general provisions of the mining law and withdrew them from location and disposition thereunder and was a legislative assertion of control and ownership thereof by the United States, except as specifically provided in section 37 of the act. It is the duty of the department to scrutinize claims that are asserted to be within the exceptions and ascertain whether the government or the individual has the better right. The question is one of validity, and under section 37 maintenance is an essential element of validity. Only controversies between adverse claimants under conflicting mining locations of the same land, and which relate solely to the right of possession are committed exclusively to the courts. * * *" 52 L.D. at 303.

Following this ruling in *Krushnic* the land office instituted numerous assessment work contests. Annual Report of the Secretary of the Interior, Fiscal Year 1928, page 11. Included in these proceedings were Contest Nos. 11757, 11759, 11761, 12029 and 12039, regarding the placer claims in Civil Actions Nos. 8680, 8685 and 9202. Meanwhile, however, *Krushnic* found its way to the Supreme Court. The decision of the Department was there reversed. The Supreme Court ruled that the Secretary's decision that cessation of assessment work automatically terminates the claim "violates the plain words of the excepting clause of the Leasing Act." Wilbur v. United States ex rel. Krushnic, supra, 280 U.S. at 318, 50 S.Ct. at 105. The reasoning was that while performance of annual labor "maintains" a claim,

> "the owner equally maintains his claim, within the meaning of the Leasing Act, by a resumption of work, unless at least some form of challenge on behalf of the United States to the valid

existence of the claim has intervened * * *" 280 U.S. at 317–18, 50 S.Ct. at 105.

Failure to perform assessment work on a claim located prior to the leasing act, the court concluded, only renders it subject to loss by relocation and is *without effect* so far as the Government is concerned.

> "The owner [of a mining claim] is not required to purchase the claim or secure patent from the United States; but, so long as he complies with the provisions of the mining laws, his possessory right, for all practical purposes of ownership, is as good as though secured by patent. While he is required to perform labor of the value of $100 annually, a failure to do so does not *ipso facto* forfeit the claim, but only renders it subject to loss by relocation. And the law is clear that no relocation can be made if work be resumed after default and before such relocation.

> "Prior to the passage of the Leasing Act, annual performance of labor was not necessary to preserve the possessory right, with all the incidents of ownership above stated, as against the United States, but only as against subsequent relocators. So far as the government was concerned, failure to do assessment work for any year was without effect. Whenever $500 worth of labor in the aggregate had been performed, other requirements aside, the owner became entitled to a patent, even though in some years annual assessment labor had been omitted. P. Wolenberg, et al., 29 L.D. 302, 304; Nielson v. Champagne Mining & M. Co., 29 L.D. 491, 493, 280 U.S. at 317, 50 S.Ct. at 104–05.

The decision in *Krushnic* did not put at rest the problem of jurisdiction, at least not for the Department. The Department's interpretation was that it prohibited the Government's invalidating mining claims for failure to perform assessment work only where the claimant has resumed the assessment work before "some form of challenge on behalf of the United States to the valid existence of

the claim has intervened." [2] The Department then undertook to investigate the validity of oil shale claims upon which assessment work had stopped and had not been resumed. It posted a notice on each such claim. This declared that the United States had taken possession of the land for its exclusive use and benefit. Numerous such notices were posted; many contest proceedings were instituted; and many claims covering hundreds of thousands of acres were declared null and void. Annual Report of the Secretary of the Interior, Fiscal Years 1930, p. 14; 1931, p. 65; 1932, pp. 18, 58; 1933, p. 60.

"It is the department's view that a challenge of an oil shale claim which is in default for the nonperformance of assessment work, by notice of the preferment of a charge against the claim to that effect in a proceeding instituted in accordance with the regulations of February 26, 1916, Circular No. 460 (44 L.D. 572), while such default continues to exist, and a judgment by the department that the charge is sustained after due notice and opportunity to be heard, has the same effect in the extinguishment of the claim as would a valid relocation of a mining claim located on account of minerals other than those mentioned in the leasing act." The Federal Shale Oil Company, supra, 53 I.D. at 221.

On April 1, 1933, the Department suspended these actions to await "court decisions on [the] jurisdiction of the Department to challenge the validity of oil shale locations for failure to perform annual labor thereon." Annual Report of the Secretary of the Interior, Fiscal Year 1934, p. 65. The litigation referred to was culminated in the Supreme Court's decision in Ickes v. Virginia-Colorado Development Corporation, supra.

In *Virginia-Colorado*, the Court reviewed a decree requiring the Secretary of the Interior to vacate certain adverse proceedings together with his decision declaring certain placer claims of the plaintiff in that case to be void. Plaintiff had alleged that he had located oil shale placer claims on mineral lands of the United States in Colorado in June, 1917. Annual assessment work had been performed for each year through July 1, 1930, but none had been done during 1931 when the Department initiated adverse proceedings challenging the claim for nonperformance of the work and failure to resume prior to the contest proceedings.

The Supreme Court affirmed this decree and in so doing the opinion by Mr. Justice Hughes, declared and clarified several points.

First, the decision reaffirmed the holding in *Krushnic* as to the character of the right acquired. On this it quoted:

" * * * Restating the rule declared by many decisions, we said in Wilbur v. U. S. ex rel. Krushnic, 280 U.S. 306, 316, 50 S.Ct. 103, 104, 74 L.Ed. 445, that such a location, perfected under the law, 'has the effect of a grant by the United States of the right of present and exclusive possession. The claim is property in the fullest sense of that term.' It is alienable, inheritable, and taxable."

*Secondly*, it again spelled out the extent of the Department's authority as follows:

"There was authority in the Secretary of the Interior, by appropriate proceedings, to determine that a claim was invalid for lack of discovery, fraud, or other defect, or that it was subject to cancellation by reason of abandonment. [Citing cases]

"The Leasing Act of 1920 inaugurated a new policy. Instead of the acquisition of rights by location, the act provided for leases. But by express

---

2. The Federal Shale Oil Co., 53 I.D. 213, 220 (1930). See also, Francis D. Weaver, 53 I.D. 175 (1930), On Rehearing. 53 I.D. 179 (1930); Virginia-Colorado Development Corporation, 53 I.D. 666 (1932); State v. Madell, 53 I.D. 195 (1930); Instructions, Government Proceedings Against Oil Shale Claims for Default in Assessment Work, 53 I.D. 131 (1930).

provision, the act saved existing valid claims 'thereafter maintained in compliance with the laws under which initiated, which claims may be perfected under such laws.' Section 37 of the act (30 U.S.C.A. § 193). What then was the status of plaintiff's claims under this exception? They were originally valid claims. No question is raised to the contrary. There is no suggestion of lack of discovery, fraud, or other defect. There is no ground for a charge of abandonment. The allegations of the bill, admitted by the motion to dismiss, dispose of any such contention. Plaintiff had lost no rights by failure to do the annual assessment work; that failure gave the government no ground of forfeiture. Wilbur v. U. S. ex rel. Krushnic, supra."

*Thirdly*, it was held that the Saving Clause (Section 37 of the Leasing Act) preserved all rights acquired prior to the enactment of the act, and that the reservation did not enlarge the Department's authority. On this it said:

"In this view, plaintiff came directly within the exception. The government invokes the new policy of the Leasing Act abolishing the practice of location. But the saving provision of section 37 is a part of the policy of the act. Its terms explicitly declare the will of Congress as to valid existing claims, with full understanding of the status of such claims under the prior law.

"The government refers to the reservation in the opinion in Wilbur v. U. S. ex rel. Krushnic, supra, as to the maintenance of a claim by a resumption of work 'unless at least some form of challenge on behalf of the United States to the valid existence of the claim has intervened.' But that was a reservation, not a decision, and it does not aid the government in its contention here. To be effective, the 'challenge' to the 'valid existence' of a claim must have some proper basis. No such basis is shown."

The Court's conclusion was that "the Department's challenge, its adverse proceedings, and the decision set forth in the bill went beyond the authority conferred by law."

Soon after the decision of the Supreme Court in *Virginia-Colorado,* the Department issued its opinion in The Shale Oil Company, 55 I.D. 287 (1935). This in a sense implemented the Supreme Court's ruling. The appeal to the Secretary was from a Commissioner's denial of patent application. The contention was that the Land Department was without jurisdiction and without legal authority to question a placer claim owner's failure to perform assessment work for any year. The First Assistant Secretary reversed the decision and remanded the case with instructions to reinstate the application and to dispose of it unaffected by default in the performance of assessment labor. In commenting on the *Virginia-Colorado* opinion the Assistant Secretary noted that "the challenge to the valid existence of the claims had no proper basis; and that the Department's challenge, its adverse proceedings and the decision set forth in the Bill went beyond the authority conferred by law."

The Assistant Secretary went even further; he concluded that: "The above-mentioned decisions in the cases of *Francis D. Weaver* and *Federal Oil Shale Company* and other departmental decisions in conflict with this decision are hereby overruled."

Thus, the Department not only clearly recognized its lack of authority to deal with the assessment work problem in the case before it, but also it cleared the record by overruling all prior inconsistent decisions.

There are other evidences that this was and continued to be the viewpoint of the Department many, many years following the *Virginia-Colorado* decisions. The viewpoints of various officials, reflected in the correspondence, show that they believed that prior decisions for-

feiting claims for failure to do assessment work were void.[3]

The regulations governing the Bureau of Land Management recognize this proposition also. See 43 C.F.R. § 3420.4 (1966). It provides:

"The annual expenditure of $100 in labor or improvements on a mining claim, required by section 2324 of the Revised Statutes (30 U.S.C. § 28), is, with the exception of certain phosphate placer locations, validated by the act of January 11, 1915 (38 Stat. 792; 30 U.S.C. 131), under which regulations were issued March 31, 1915 (Circ. 396), 44 L.D. 46, solely a matter between rival or adverse claimants to the same mineral land, and goes only to the right of possession, the determination of which is committed exclusively to the courts." [4]

Similarly, the annual reports of the Secretary of the Interior also reflected the Department's view in this regard.[5] Moreover, the commentators have gener-

---

3. Letter of Secretary Lane dated October 23, 1918:

"I am in receipt of your letter dated October 2, 1918, and making inquiry as to the necessity for performing annual assessment work on some oil shale lands in Wyoming, which you and associates are claiming under placer mining locations made in 1917 and 1918.

\*     \*     \*     \*     \*

"As a general rule matters involving questions of assessment work on mining claims arise between adverse claimants to the same mineral land and go only to the right of possession, the determination of which is committed exclusively to the courts."

Letter of First Assistant Secretary Vogelsang dated January 20, 1919:

"The annual expenditure on unpatented mining location required under Section 2324 U.S. Revised Statutes, and commonly called annual assessment work, is, with the exception of certain phosphate locations affected by a special act of Congress, solely a matter between rival or adverse claimants to the same mineral land, and goes only to the right of possession, the determination of which is committed exclusively to the courts. In other words, the non-performance of assessment work renders the land subject to adverse relocation provided work is not resumed (40 Stat. 343)."

Letter from Commissioner Fred W. Johnson dated June 28, 1935:

"It is possible if you left your claims in 1925 and have not since performed assessment work thereon that they have been relocated, but as also stated in the paragraph referred to, 'The determination of the question of the right of possession between rival or adverse claimants to the same mineral land is committed exclusively to the court.' Matters of trespass, thievery, etc., such as those referred to in your letter, are also committed to the jurisdiction of the court, being punishable only under the laws of the state. As this office has no jurisdiction in the matters mentioned in your letter it will not undertake to advise you in that regard."

Letter from Commissioner Johnson dated July 25, 1935:

"Replying to your letter of July 20, 1935, you are advised that this office has no jurisdiction over questions relating to the performance of annual assessment work on mining claims, such questions being committed exclusively to the courts."

Letter from Under Secretary Chapman dated February 11, 1946:

"The failure to perform the annual assessment work for the benefit of a valid mining location has no effect as against the United States but only renders the claim subject to loss through relocation by another claimant if the work is not commenced or resumed before such relocation. Therefore, the question of whether the work done is of a nature that would be considered assessment work is not one within the jurisdiction of this Department but is for the appropriate court to determine should litigation arise between the claim holder and another claimant making a relocation of the same ground. See Ickes v. Virginia-Colorado Development Corp., 295 U.S. 639 [55 S.Ct. 888]."

See also, The Shale Oil Company, supra, pp. 20–21.

4. See also 37 L.D. 757, 769 (1909); 49 L.D. 15, 73 (1922) showing similar versions of the quoted regulation.

5. See Report of the Secretary of the Interior, Fiscal Year 1934, page 65, and see also the Statement of Secretary Wilbur before the Senate Committee on Public Lands, given on February 12, 1931.

ally regarded the question as one of jurisdiction.[6]

### Union Oil Company Decision

We turn now to consideration of the case which marked a reversal of the Department's viewpoint and attitude. In *Union Oil* a number of applicants for patents to oil shale placer mining claims which had been declared null and void in the contest proceedings during 1930–1933 sought to have patents issued. The Manager of the Land Office denied these efforts. The Secretary, in his exercise of supervisory jurisdiction, submitted the case to the Solicitor of the Department for final decision. The Manager's decision was, of course, affirmed notwithstanding that the Solicitor recognized the invalidity of the 1930–1933 rulings. He noted that failure to perform annual assessment work was not a ground for cancellation of oil shale placer claims by the Government. 71 I.D. at 170. He held, however, that even though the original cancellations were incorrect in law, that nevertheless under the principles of finality of administrative action, estoppel by adjudication, and *res judicata,* these rulings could not be challenged in the year 1962.

The Solicitor's basic assumption in the *Union Oil* decision was that the Supreme Court had not denied the Department's jurisdiction with respect to the subject matter. He also construed *The Shale Oil Company* case, supra, which had overruled all inconsistent decisions, as not reinstating the claims previously declared forfeited. In essence, he determined that the applicants were required to take action to nullify these rulings at the time and that their failure to exercise this initiative constituted something in the nature of an implied acquiescence. The important emphasis in the decision was placed on administrative finality and *res judicata.* Since this decision stands in the way of a recognition of the plaintiffs' rights, we must consider and determine its validity in the light of the Supreme Court decisions and the narrow question is whether the Department had subject matter jurisdiction with respect to performance or nonperformance of assessment work. In support of his holding that there was such jurisdiction, the Solicitor pointed to the language in *Virginia-Colorado* to the effect that the Secretary had authority by appropriate proceedings to determine that a claim was invalid for lack of discovery, fraud, or other defect, or that it was subject to cancellation by reason of abandonment. From this he concluded that the Department at all times retained jurisdiction; that is, power over these claims. As we view it, this was an unjustified interpretation of the decisions of the Supreme Court. It overlooked the basic nature in terms of property of a mining location. Both *Krushnic* and *Virginia-Colorado* proceeded on a fundamental proposition that this creates a vested property right which can be defeated only by a competitor. Historically, this was the nature and character of the mining claim, and to overlook it is to change a fundamental rule of property. No amount of administrative legerdemain can overcome this fundamental principle.

■■ It is, of course, so fundamental as to require no documentation, that an adjudication by a tribunal lacking subject matter jurisdiction is wholly nugatory, need not be appealed, and can not be *res judicata.* When,

6. E. g.:

"Assessment work upon oil-shale claims is governed by the rules of the general mining law and the claimant of a valid location prior in time to the passage of the Leasing Act is not subject to any forfeiture that did not apply to such law. In other words, fulfillment of the annual ownership work each year is not a prerequisite to continuing ownership as against the Government of the United States, and, in the absence of an adverse relocation, work may be resumed at any time." Division of Mines, California Department of Natural Resources, American Mining Law, Vol. 1, § 1051 (1943);

"Only a mining relocation can effect forfeiture, and the Federal Government cannot question the failure to perform assessment work." 2 American Law of Mining, § 7.26 (1964).

as here, the Department acted beyond the authority granted to it by the law, it acted in the particular area beyond its jurisdiction. The Supreme Court told the Department this in language as plain as legal language can be. If *Krushnic* left some unresolved question, *Virginia-Colorado* did not. It is clear from a reading of this opinion that the Court was speaking on the question of the Department's jurisdiction. As to pre-1920 locations, the Court held that they retained the legal status which they had enjoyed prior to the adoption of the Leasing Act. Both of these cases rule that prior to the adoption of this Act the performance of assessment work was unnecessary to the preservation of the locator's possessory right against the Government.

*Virginia-Colorado* clarified beyond question the proposition that the Government has never had a possessory right to pre-Leasing Act mining claims defective only for failure to perform assessment work. It follows from this that the Department is wholly without jurisdiction to inquire into the status of assessment work performance.

It is also noteworthy that there has been no contention here that plaintiffs have abandoned their claims and there is a dearth of evidence to establish acquiescence, express or implied, by plaintiffs in any assumption of jurisdiction by the Department.

 It follows, therefore, that the decision in *Union Oil* is contrary to and irreconcilable with the decisions of the Supreme Court of the United States. In so holding we recognize that the Department of the Interior is in good faith advancing a policy. Congress has, of course, granted the Department broad powers to protect public lands and the Department undoubtedly considers itself duty-bound to oppose the instant claims. This Court, however, must follow the law as laid down by the Supreme Court of the United States. It is upon this basis that we conclude that the actions of the Department in assuming jurisdiction over the failure to do assessment work is void and of no effect whatever.

The plaintiffs are directed to submit forms of judgments reflecting the views expressed in this opinion. These judgments should be submitted to defendant for approval as to form.