# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 16, 2008         Decided January 23, 2009

No. 07-5281

ORION RESERVES LIMITED PARTNERSHIP,
APPELLEE/CROSS-APPELLANT

v.

KEN SALAZAR, SECRETARY, U.S. DEPARTMENT OF THE
INTERIOR, ET AL.,
APPELLANTS/CROSS-APPELLEES

———

Consolidated with 07-5290

———

Appeals from the United States District Court
for the District of Columbia
(No. 04cv00791)

———

*Robert H. Oakley*, Attorney, U.S. Department of Justice, argued the cause for appellants/cross-appellees. With him on the briefs was *Ellen J. Durkee*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Donald L. Morgan* argued the cause and filed the briefs for appellee/cross-appellant.

Before: GINSBURG, GARLAND, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: This appeal involves a challenge by Orion Reserves Limited Partnership (Orion) to a decision of the Department of the Interior (Interior) invalidating 156 oil shale mining claims on federal land. The district court concluded that Interior's decision was arbitrary and capricious. We reach the opposite conclusion, which is compelled by the Supreme Court's holding in *Hickel v. Oil Shale Corp.*, 400 U.S. 48 (1970), that when a party substantially fails to perform the assessment work required by federal law it loses its claim to mine oil shale.

## I.

### A.

To encourage mining in the western United States, Congress enacted the General Mining Law of 1872 (Mining Law), 30 U.S.C. §§ 22–54 (2000), declaring valuable mineral deposits in federal lands "open to exploration and purchase," *id.* § 22. The Mining Law provides that citizens may stake, or "locate," claims to extract minerals without prior government permission and without paying royalties to the United States. *Id.* § 26. Claimants may also apply for purchase of a deed, or "patent," conveying full legal title to the land on which their claims are located. *Id.* § 29.

Even without a patent, claimants can maintain their mining rights indefinitely so long as they comply with federal, state, and local requirements. *Id.* §§ 26, 28. Among these obligations is a duty to perform annual assessment

work. The Mining Law requires that "until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year." *Id.* § 28. When a claimant fails to perform this annual assessment work, his claim is "open[ed] to relocation . . . as if no location of the [mineral deposit] had ever been made." *Id.* In other words, if a claimant does not complete the required annual labor or improvements, he will lose his rights in the land to a competing claimant who does. If, however, a claimant who has failed to perform assessment work later resumes work before anyone else has staked a competing claim, his original claim remains intact under a statutory exception known as the "resumption provision." *Id.* After passage of the Mining Law, Interior promulgated regulations stating that failure to perform required annual assessment work would "subject a claim to relocation" unless the claimant "resumed work after such failure and before relocation." *Nature and Extent of Mining Claims*, 37 Pub. Lands Dec. 757, 759 (1909).

The Mineral Leasing Act of 1920 (Leasing Act), 30 U.S.C. §§ 181–287, authorized Interior to take a more active role in regulating mining on federal lands. Replacing the system of location and patent for oil shale (and several other minerals), the Leasing Act requires new claimaints to lease mined land from the Secretary of the Interior and to pay the federal government annual rental fees and royalties to obtain "the privilege of mining, extracting and disposing of" valuable minerals. *Id.* § 241. Of relevance here, claims made under the Mining Law's system of location and patent were preserved under a "savings clause," provided those claims were "thereafter maintained in compliance with the laws under which initiated." *Id.* § 193. Interior subsequently promulgated revised regulations with a preface noting that regulations associated with the Mining Law no longer apply to minerals, like oil shale, listed in the Leasing Act, "except

as to valid claims" existing at the enactment of the Leasing Act "and thereafter duly maintained pursuant to the law under which located." *Nature and Extent of Mining Claims*, 49 Pub. Lands Dec. 58, 58 Note (1923).

**B.**

This case involves Orion's attempt to patent 156 oil shale mining claims in Uintah County, Utah that its original predecessor-in-interest located between 1917 and 1919 under the Mining Law. It was not until 1988, however, that another of Orion's predecessors filed patent applications for the claims. In the course of reviewing these applications, the Bureau of Land Management (BLM), a division of Interior, challenged two of Orion's claims, alleging they were invalid because, among other things, Orion's predecessors had failed to perform annual assessment work for significant periods of time. The parties agreed to put the matter on hold until Interior finished processing Orion's other patent applications. The BLM continued its investigation of Orion's claims and discovered a substantial number of years between 1920 and 1970 in which no affidavits, required annually by state law as a record that assessment work was completed, were filed. Although work records differ for each of the 156 claims, with lapses apparently ranging from 18 to 50 years, it was not until 1970 that Orion's predecessors consistently performed at least $100 worth of assessment work each year and made the requisite filings. On this basis, the BLM declared Orion's 156 oil shale claims void. *Crippled Horse Invs., L.P.*, 3833 (UT932-OA) UMC65858 (Bureau Land Mgmt. Sept. 2, 1999) (*Crippled Horse I*).

Orion appealed the BLM's decision to the Interior Board of Land Appeals (IBLA).[1] Orion did not dispute the missing assessment work records, but argued that it had nevertheless preserved its claims under longstanding judicial and departmental interpretations of federal law, requiring only that Orion resume annual work at some time, which it had done. The IBLA rejected Orion's argument and concluded that Supreme Court precedent requires that claimants "substantially satisfy" the Mining Law's annual assessment work obligation in order to maintain claims under the Leasing Act's savings clause. *Crippled Horse Invs., L.P.*, 161 I.B.L.A. 264, 273–74 (2004) (*Crippled Horse II*). Orion's ultimate resumption of work in 1970 could not revive claims forfeited by its decades-long failure to perform the required annual assessment labor or improvements. *Id.* at 277. Orion's failure to file work affidavits for numerous years made out a prima facie case that the work was not performed in those years. *Id.* at 274–75. Because Orion did not proffer evidence that assessment work was in fact done in years for which no affidavits were filed, the IBLA held that its claims were invalid. *Id.* at 277.

Orion brought suit in the United States District Court for the District of Columbia challenging the IBLA decision under the Administrative Procedure Act. The district court bifurcated the case, addressing first the merits of the IBLA decision and postponing until later Orion's separate and contingent claim that Interior failed to process its patent applications in a timely fashion. On March 31, 2006, the court granted Orion's motion for summary judgment, reasoning that Orion and its predecessors-in-interest were entitled to rely on

---

[1] The IBLA is Interior's review authority charged with deciding, on behalf of the Secretary, matters relating to the use and disposition of public lands and their resources. *See* 43 C.F.R. § 4.1(b)(3).

the resumption exception to maintain their claims because Interior's regulations allowed for such a resumption privilege when Orion resumed annual assessment work in 1970. *Orion Reserves Ltd. P'ship v. Norton*, No. 04-0791, slip op. at 8–12 (D.D.C. 2006) (*Norton*).[2]

On June 28, 2007, the district court took up the question whether Interior unreasonably delayed action on Orion's patent applications. *Orion Reserves Ltd. P'ship v. Kempthorne*, 516 F. Supp. 2d 8 (D.D.C. 2007) (*Kempthorne*). The court concluded that "the delay in processing Orion's patent applications ha[d] not been unreasonable," especially given several administrative and congressional moratoria on claim processing, the unusually large size of the land at issue, limited BLM resources, and the complex legal issues involved. *Id.* at 14–15. The court remanded the proceedings to Interior for further action, but ordered the BLM to file quarterly reports detailing progress made in processing Orion's patent applications. *Id.* at 16–17.

Interior filed a timely notice of appeal and challenges the district court's conclusion that Orion's repeated and extended failure to perform annual assessment work did not forfeit its oil shale claims. Orion cross-appeals, arguing that Interior unreasonably delayed processing its patent applications. Orion has also lodged a "conditional cross-appeal" asking this court to consider several alternative grounds for affirmance in the event we conclude that the district court's decision on the merits was in error. *See Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 649 (D.C. Cir. 1998) (recognizing this

---

[2] The court also held that Orion had waived its argument that the IBLA's decision to invalidate the oil shale claims was barred by the statute of limitations in 28 U.S.C. § 2462 (2000), because it had failed to make this argument to the agency. *Norton*, slip op. at 6–7.

circuit's willingness to entertain an otherwise prevailing party's conditional cross-appeal seeking affirmance on alternative grounds).

We have jurisdiction under 28 U.S.C. § 1291 and review the summary judgment decision de novo. *See Stolt-Nielsen Transp. Group Ltd. v. United States*, 534 F.3d 728, 732 (D.C. Cir. 2008). Upon concluding that the district court's decision on the merits was in error, we take up and find wanting each of Orion's alternative arguments. We need not reach Orion's unreasonable delay claim because we conclude that Orion's mining claims are no longer valid and therefore no longer need patent processing.

## II.

The IBLA's determination that Orion had forfeited its oil shale mining claims, and the district court's conclusion that it had not, turn on undisputed but different facts. The district court focused on the ultimate resumption of annual assessment work for each of the claims; the IBLA based its decision on the lengthy cessation of required assessment work over the course of several decades. The district court found the IBLA's decision arbitrary and capricious because Orion's predecessors resumed annual assessment work in 1970, at a time when Interior's regulations "allowed for noncompliant claimants to remedy assessment work performance failures by resuming work." *Norton*, slip op. at 8. It was not until 1993 that Interior removed from its regulations any reference to the resumption exception and announced that a lapse in assessment work "causes the interest of the claimant(s) in the minerals subject to the mining laws to revert back to the public domain." 43 C.F.R. § 3851.3(b) (1993). The district court concluded that, by effectively disavowing the longstanding resumption exception, Interior's 1993 regulatory

revision was a "change[] to the law" that could only work prospectively and could not reach back to undermine mining claims for which Orion's predecessors had resumed work in 1970. *Norton*, slip op. at 11. Interior's application of this revised regulation to invalidate Orion's claims was therefore "impermissibly retroactive." *Id.* Consistent with Interior's original regulations, the court suggested that Orion should get the benefit of the Leasing Act's savings clause, which preserved the legal status quo for claims first made under the Mining Law. *See id.* at 9–10. According to this analysis, resumption of assessment work prior to any competing claim was sufficient to maintain Orion's oil shale claims.

The IBLA, by contrast, focused on the long cessation of annual assessment work. In doing so, it applied Mining Law and Leasing Act provisions, as interpreted by the Supreme Court in *Hickel v. Oil Shale Corp.*, 400 U.S. 48 (1970), to Orion's oil shale claims. *See Crippled Horse II*, 161 I.B.L.A. at 272–74. The *Hickel* Court emphasized that the Leasing Act "completely changed" the legal terrain regarding oil shale lands. 400 U.S. at 51. The Act put an end to private location of oil shale mining claims. As a result, claimants no longer feared other parties' seeking to displace their idle claims; meaningful enforcement of the assessment work requirement could no longer depend on "the private initiative of relocators." *Id.* at 56. Although the Leasing Act's savings clause provides that individuals may preserve Mining Law claims "thereafter maintained in compliance with the laws under which initiated," 30 U.S.C. § 193, the Court did not read the clause merely to preserve the status quo for Mining Law claims as against competing claims. Recognizing that unless Interior could directly challenge lapsed Mining Law claims, "the 'maintenance' provision of [the Leasing Act's savings clause] becomes largely illusory," the Court held that

the power of enforcement had shifted to the federal government. *Hickel*, 400 U.S. at 56–57.

In the context of this new government leasing regime, the *Hickel* Court concluded that to preserve a Mining Law claim, a claimant must substantially comply with the assessment work requirement. *See id.* at 56–57. The Court held that "token assessment work or assessment work that does not substantially satisfy" the Mining Law's annual work requirement "is not adequate to 'maintain' the claims" under the Leasing Act's savings clause. *Id.* at 57. To allow claimants to keep their claims despite long lapses in assessment work would "defeat the policy that made the United States, as the prospective recipient of royalties, a beneficiary of these oil shale claims." *Id.*

*Hickel*'s "substantial compliance" standard governs Orion's sustained failure to complete the required annual assessment work. Applying this standard, the IBLA properly concluded that Orion's decades-long lapse in performing assessment work did not substantially satisfy the statutory work requirement, regardless of its ultimate resumption of annual work. *See Crippled Horse II*, 161 I.B.L.A. at 277; *see also Exxon Mobil Corp. v. Norton*, 346 F.3d 1244, 1252 (10th Cir. 2003) (upholding a finding that gaps in assessment work throughout much of the period between 1929 and 1974 indicated a lack of substantial compliance with annual work requirements); *Cliffs Synfuel Corp. v. Norton*, 291 F.3d 1250, 1261 (10th Cir. 2002) (concluding that there was a clear lack of substantial compliance when assessment work was not performed between 1930 and 1977).

The district court's contrary conclusion is wrong because it missed the effect of *Hickel*. The court erroneously applied Interior's original regulations to Orion's claims even though

those regulations are inconsistent with the statutory requirements as explained in *Hickel*.[3] The authority to issue regulations is not the power to make law, and a regulation contrary to a statute is void. *Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*, 297 U.S. 129, 134 (1936) ("A regulation which . . . operates to create a rule out of harmony with the statute is a mere nullity."). Because the Supreme Court determined that the Mining Law and the Leasing Act together require "substantial compliance" with assessment work obligations to maintain oil shale claims, any contrary directive in Interior's past regulations offers no protection to a noncompliant claimholder like Orion.

The district court also mistakenly held that Interior violated principles of retroactivity when it attempted "to invalidate [Orion's] claims for lapses in assessment work that occurred before either the amended regulation or the *Hickel* decision came into existence." *Norton*, slip op. at 8. It is true that, as a general rule, regulations may only be applied prospectively, but the IBLA relied on *Hickel* and not on any of Interior's regulations. *See Crippled Horse II*, 161 I.B.L.A. at 273–74. Supreme Court decisions are given retroactive effect absent a clear statement from the Court to the contrary. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties

---

[3] In order to make its policies "consistent with the law" as interpreted in *Hickel*, 37 Fed. Reg. 17,836 (1972), Interior promulgated regulations in 1972 specifying that failure to perform annual assessment work would render a mining claim "subject to cancellation" by the government, 43 C.F.R. § 3851.3(a) (1972). In 1993 Interior further revised its regulations to remove any reference to the resumption exception and to clarify that a lapse in assessment work "causes the interest of the claimant(s) in the minerals subject to the mining laws to revert back to the public domain." 43 C.F.R. § 3851.3(b) (1993).

before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect . . . as to all events, regardless of whether such events predate or postdate our announcement of the rule."). There is no suggestion in *Hickel* that the decision would have anything other than retroactive effect.[4] The IBLA properly applied *Hickel*'s "substantial compliance" standard to invalidate Orion's oil shale mining claims.

## III.

As part of its conditional cross-appeal, Orion offers several alternative reasons why we should affirm the district court's grant of summary judgment. These include three separate arguments that the IBLA decision was arbitrary and capricious or unsupported by substantial evidence. *See* 5 U.S.C. § 706(2) (2006). "'The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency.'" *Mount Royal Joint Venture v. Kempthorne*, 477 F.3d 745, 753 (D.C. Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). We uphold the IBLA's determinations so long as the Board "engaged in reasoned decisionmaking and its decision is adequately explained and supported by the record." *N.Y. Cross Harbor R.R. v. Surface Transp. Bd.*, 374 F.3d 1177, 1181 (D.C. Cir. 2004) (internal quotation marks omitted). Likewise, because substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Palace Sports & Entm't, Inc. v. NLRB*, 411 F.3d

---

[4] Indeed, the Court indicated in its remand order that the "substantial compliance" test applied to claims for which assessment work had lapsed in the early 1930s, long before the Court's decision. *See Hickel*, 400 U.S. at 58.

212, 220 (D.C. Cir. 2005) (internal quotation marks omitted), we reverse an agency's decision "only when the record is so compelling that no reasonable factfinder could fail to find to the contrary," *Highlands Hosp. Corp. v. NLRB*, 508 F.3d 28, 31 (D.C. Cir. 2007) (internal quotation marks omitted).

## A.

Rather than contest Interior's evidence that it failed for many years to perform annual assessment work, Orion argues that its resumption of work in 1970 was sufficient to maintain its oil shale claims, notwithstanding *Hickel*. But Orion misreads *Hickel*, which made clear that the Mining Law's resumption exception—the linchpin of Orion's argument—did not survive the Leasing Act.

Citing to language from two early Supreme Court cases that applied the maintenance provision of the Leasing Act's savings clause, Orion argues that the resumption exception remains in force. In *Wilbur v. Krushnic*, 280 U.S. 306 (1930), the Supreme Court suggested that a lapse in assessment work does not automatically forfeit a Mining Law claim, but only renders it subject to loss by relocation. *Id.* at 317. Noting that the claimant had only failed to perform assessment work for a single year and had fully resumed work before anyone contested its claim, the Court concluded that "no relocation can be made if work be resumed after default and before such relocation." *Id.* Similarly, in *Ickes v. Virginia-Colorado Development Corp.*, 295 U.S. 639 (1935), the Court rejected Interior's attempt to invalidate mining claims during a fourteen-month lapse in assessment work. Noting that the claimant had not only stated its intention to resume work but also made arrangements to do so, the Court concluded that the temporary work failure "gave the government no ground of forfeiture." *Id.* at 646.

As noted above, the *Hickel* Court reexamined the annual assessment work requirement in the context of the new leasing regime, concluding that the Leasing Act "makes the United States the beneficiary of all claims invalid for lack of assessment work." *Hickel*, 400 U.S. at 57. Because *Hickel* involved mining claims that Interior had cancelled for lack of assessment work rather than lapsed claims for which a claimant had resumed work, *id.* at 50, the Court did not have occasion to address the Mining Law's resumption right with any specificity. Nevertheless, the Court's holding makes clear that, regardless of whether assessment work has resumed, the only relevant inquiry concerns the actual work performed:

> [W]e now hold that token assessment work, or assessment work that does not substantially satisfy the requirements of 30 U.S.C. § 28, is not adequate to "maintain" the claims within the meaning of [the savings clause] of the Leasing Act.

*Id.* at 57. In practice, the Court noted, this means "compliance with 'everything' under 30 U.S.C. § 28, which taken literally would mean assessment work of $100 'during each year.'" *Id.* at 56. Although the Court suggested that not "every default in assessment work," however minimal or excusable, will automatically "cause the claim to be lost," it concluded that successful claimants must show "substantial compliance" with the annual requirement. *Id.* at 57.

The Mining Law's resumption exception was thus replaced by *Hickel*'s "substantial compliance" test, and Orion's reliance on prior cases suggesting a resumption right that survived the Leasing Act is misplaced. Although the *Hickel* Court did not explicitly overrule *Krushnic* and *Virginia-Colorado*, it concluded that those cases reflect "a

judicial attitude of fair treatment for claimants who have substantially completed the assessment work required." *Id.* at 52. Significantly, the Court characterized all statements from those prior cases in conflict with the discussion and holding in *Hickel* as "dicta." *Id.* at 57. *Krushnic* and *Virginia-Colorado* are best understood to signify no more than that a minor or brief default in assessment work does not necessarily "cause the claim to be lost." *Id.*

The IBLA was therefore correct to base its decision upon "the quantum of the actual assessment work performed and the length of time the claimant failed to meet the annual assessment work required by the Mining Act," *Crippled Horse II*, 161 I.B.L.A. at 274 (quoting *Cliffs Synfuel*, 291 F.3d at 1259). That Orion resumed assessment work before Interior moved to invalidate its claims is not, on the facts of this case, even relevant. Given evidence of Orion's decades-long noncompliance with the annual work requirement, the IBLA had good reason to invalidate its oil shale claims under *Hickel*'s "substantial compliance" test.

**B.**

Orion also contends that the IBLA erred in failing to consider its *intent* to maintain the 156 oil shale claims at issue. We disagree. *Hickel* made a showing of intent irrelevant when a claimant has substantially failed to perform required assessment work. *See* 400 U.S. at 57. In an effort to avoid the force of *Hickel*, Orion makes much of a subsequent case, *United States v. Locke*, 471 U.S. 84 (1985), which addressed a different statute and a different issue. In the course of distinguishing an annual filing deadline in the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1744 (2000), from the Mining Law's assessment work requirement, the *Locke* Court suggested that

it was open to the Court to conclude in *Hickel* that Congress had intended to make the assessment work requirement merely an indicium of a claimant's specific intent to retain a claim. Full compliance with the assessment work requirements would establish conclusively an intent to keep the claim, but less than full compliance would not by force of law operate to deprive the claimant of his claim. Instead, less than full compliance would subject the mine owner to a case-by-case determination of whether he nonetheless intended to keep his claim.

*Locke*, 471 U.S. at 101–02. The thrust of *Hickel*'s holding was not altered by *Locke*, which merely rejected a lower court's reliance on *Hickel* in finding that a December 31 filing had "substantially complied" with the FLPMA requirement to file "on or before December 30." *Id.* at 100. The *Locke* Court emphasized that "[f]ailure to comply fully with the physical requirement that a certain amount of work be performed each year is significantly different from the complete failure to file on time documents that federal law commands be filed." *Id.* at 101. The Court noted that although the mining laws at issue in *Hickel* "do not clearly provide that a claim will be lost for failure to meet the assessment work requirements," *id.*, thus leaving open the possibility of an "intent" standard for invalidation, the FLPMA "explicitly provides that failure to comply with the applicable filing requirements leads automatically to loss of the claim," *id.* at 102. Rather than offering an authoritative interpretation of *Hickel*, the Court was simply rejecting an argument that the FLPMA filing deadline is susceptible to an intent analysis. *Locke* did not disturb the substantial compliance inquiry. Indeed, the Court specifically noted that only "if an individual complied substantially but not fully with the requirement" might he

"under some circumstances be able to retain possession of his claim." *Id.* at 101. In the absence of substantial compliance, intent (or any other factor) is irrelevant.

Orion's claims are invalid because its predecessors did not substantially comply with the annual assessment work requirement. Unlike the brief, fourteen-month pause in assessment work that led the *Virginia-Colorado* Court to consider the claimant's stated intention and preparations to resume work, 295 U.S. at 643, the decades-long absence of required annual improvements to Orion's mining claims did not "substantially satisfy" the statutory work requirements, *Hickel*, 400 U.S. at 57. When a claimant has not substantially satisfied the annual assessment work requirement, his intent is immaterial.

## C.

Orion also argues that the IBLA improperly inferred from missing annual assessment work affidavits that Orion did not perform required work during those years. But Orion has failed to produce any evidence that assessment work in fact took place in years when no affidavits were filed. In order to maintain its mining rights, a claimant must comply with applicable federal, state, and local requirements. *See* 30 U.S.C. § 26. Utah law, to which Orion's claims are subject because they are located in Utah, requires that a claimowner who has performed assessment work must, within thirty days, file an affidavit stating "that the annual assessment work required to maintain the claim was performed." UTAH CODE ANN. § 40-1-6(2)(c) (2008). Although the Utah Supreme Court held that failure to file a required affidavit does not result in loss of a mining claim when there is other compelling evidence that the assessment work had in fact been performed, *Murray Hill Mining & Milling Co. v.*

*Havenor*, 66 P. 762, 765 (Utah 1901), the statutorily required affidavit is considered "prima facie evidence of the facts stated in the affidavit," UTAH CODE ANN. § 40-1-6(3).

It was therefore reasonable for the IBLA to conclude that the absence of affidavits made out "a prima facie case that none were filed because the work was not performed," *Crippled Horse II*, 161 I.B.L.A. at 274. This approach is consistent with longstanding department practice. *See, e.g.*, *United States v. Haskins*, 59 I.B.L.A. 1, 102 (1981) (concluding that a lack of assessment work records "established a prima facie case that the work had not been performed"). That Orion filed affidavits for some years, but not others, strengthens the inference that assessment work was recorded when it was in fact performed.

To be sure, failure to file affidavits does not conclusively demonstrate a failure to conduct assessment work, and the IBLA considered the absence of affidavits to be nothing more than prima facie evidence, shifting the burden to Orion "to produce countervailing evidence of assessment work performed." *Crippled Horse II*, 161 I.B.L.A. at 275. Orion had ample opportunity to produce evidence of work, but it failed to do so before the IBLA, in the district court, and on appeal. We determine that the IBLA's conclusion that Orion did not substantially comply with the assessment work requirement was supported by substantial evidence.

## IV.

In its motion for summary judgment, Orion argued that Interior was barred from invalidating its claims by 28 U.S.C. § 2462, which provides that a "proceeding for the enforcement of any civil . . . forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within

five years from the date when the claim first accrued . . . ." The district court correctly concluded that because Orion failed to raise this statute of limitations defense during the administrative proceedings, it had waived this argument. *Norton*, slip op. at 6–7; *see also Salt Lake Cmty. Action Program v. Shalala*, 11 F.3d 1084, 1087 (D.C. Cir. 1993) (identifying "the well-settled premise that objections to agency proceedings must be presented to the agency 'in order to raise issues reviewable by the courts'" (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952))).

Orion now seeks to excuse its failure to raise this defense before the IBLA by suggesting that the BLM decision was based on Utah (rather than federal) law. In reality, the BLM decision was grounded in federal law. The decision identified relevant provisions of the Mining Law and the Leasing Act, discussed applicable federal regulations, and cited the Supreme Court's decision in *Hickel* as the legal basis for Interior's invalidation of the oil shale claims. *See Crippled Horse I*, slip op. at 1–2. Orion's excuse therefore fails, and its statute of limitations argument was forfeited.

## V.

Finally, Orion argues that Interior's failure to provide notice and a hearing prior to invalidating its oil shale claims violated Orion's right to due process. According to Orion, the BLM should have afforded it the opportunity to respond with documentation as part of an administrative contest proceeding, and the IBLA should have held an evidentiary hearing before invalidating Orion's mining claims. Interior argues that it followed longstanding department policy and practice in concluding, with respect to Orion's claims, that "no contest pursuant to 43 C.F.R. 4.451-1 or hearing pursuant

to 43 C.F.R. 4.415 is necessary where the material facts are undisputed." *Crippled Horse II*, 161 I.B.L.A. at 277; *see also Woods Petroleum Co.*, 86 I.B.L.A. 46, 55 (1985) (concluding that the department need only grant a hearing "when there are significant factual or legal issues remaining to be decided and the record without a hearing would be insufficient for resolving them" (quoting *Stickelman v. United States*, 563 F.2d 413, 417 (9th Cir. 1977))). We give "substantial deference" to an agency's interpretation of its own regulations, "only setting it aside if the plain language of the regulation or 'other indications of the [agency's] intent' require another interpretation." *Fabi Constr. Co. v. Sec'y of Labor*, 508 F.3d 1077, 1080–81 (D.C. Cir. 2007) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

It is the IBLA's decision and not the BLM's initial action that binds the agency and formally extinguished Orion's mining claims. *See Nat'l Wildlife Fed'n*, 145 I.B.L.A. 348, 362 (1998) (noting that the IBLA is "delegated responsibility to decide for the Department 'as fully and finally as might the Secretary' appeals regarding use and disposition of the public lands and their resources" (quoting 43 C.F.R. § 4.1 (2005))); *see also Pennaco Energy, Inc. v. U.S. Dep't of Interior*, 377 F.3d 1147, 1156 n.5 (10th Cir. 2004) ("The IBLA issues the DOI's final and binding decision, not the BLM."). The IBLA reviewed the BLM's determination de novo. Although the IBLA had discretionary authority to grant an evidentiary hearing, *see* 43 C.F.R. § 4.415, Orion failed to request one, and there is no indication that Orion was foreclosed in any way from submitting documents or other evidence in its defense during the IBLA proceedings. *See Timothy J. Bottoms*, 150 I.B.L.A. 200, 216 (1999) (finding that due process was "satisfied without an administrative hearing"

when the claimant had adequate "opportunities to submit documentary and other evidence to BLM and this Board").

Orion has also failed to identify any evidence that created a dispute as to material fact requiring resolution through a formal evidentiary hearing. *See KernCo Drilling Co.*, 71 I.B.L.A. 53, 56 (1983) ("A hearing is necessary only where there is a material issue of fact requiring resolution through the introduction of testimony and other evidence. In the absence of such an issue, no hearing is required.").[5] Although Orion advanced arguments about the proper inferences that may be drawn from an absence of work affidavits, it failed to introduce any evidence suggesting that assessment work was actually performed in years when no affidavit was filed. Without a factual conflict, the IBLA had no reason to grant Orion an evidentiary hearing. *See Woods Petroleum*, 86 I.B.L.A. at 55 (refusing to grant a hearing when "the dispute did not involve facts, but involve[d] the proper application and interpretation of those facts"); *see also Codd v. Velger*, 429 U.S. 624, 627 (1977) (per curiam) (holding that if a hearing "mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute"); *Conoco Inc. v. FERC*, 90 F.3d 536, 543 n.15 (D.C. Cir. 1996) (concluding that the APA requires agencies "to hold hearings only when the disputed issues may not be resolved through an examination of written submissions" (quoting *Envtl. Action v. FERC*, 996 F.2d 401, 413 (D.C. Cir. 1993))). Given Orion's

---

[5] The IBLA's interpretation of when an evidentiary hearing is required is consistent with the regulatory text, 43 C.F.R. § 4.415, and accords with other department determinations of what due process requires in similar circumstances, *see, e.g.*, *Taylor Energy Co. Phillips Petroleum*, 148 I.B.L.A. 286, 295 (1999) (finding that IBLA appeal proceedings satisfied due process in circumstances when "the record does not reflect sufficient factual issues to warrant a hearing").

failure to identify any meaningful factual dispute, the agency proceedings provided sufficient process and Orion's due process challenge to the IBLA decision fails.

## VI.

For the foregoing reasons, the judgment of the district court is

*Reversed.*