# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2459
_____

Mandan, Hidatsa & Arikara Nation

*Plaintiff - Appellant*

v.

U.S. Department of the Interior; Deb Haaland, in her official capacity as Secretary of the Interior

*Defendants - Appellees*

Slawson Exploration Company, Inc.

*Intervenor Defendant - Appellee*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: October 19, 2023
Filed: March 5, 2024
_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

The Bureau of Land Management (BLM) approved eight applications to drill from Slawson Exploration Company, Inc. The Mandan, Hidatsa and Arikara Nation

(MHA), an Indian nation of three affiliated tribes, challenged the approvals under 5 U.S.C. § 706 of the Administrative Procedure Act. Slawson intervened. The district court[1] granted summary judgment to BLM and Slawson, dismissing the case with prejudice. MHA appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Lake Sakakawea, the third-largest reservoir in the United States, is one-sixth of the surface area of the Fort Berthold Indian Reservation. The Lake is also MHA's sole source of drinking water. Beneath the reservation is the Bakken, one of the world's most valuable oil reserves. Oil production on the reservation accounts for about one-sixth of North Dakota's oil production.

In 2011, Slawson submitted eleven applications to construct a well pad to extract oil and natural gas from underneath Lake Sakakawea—the Torpedo Project. Slawson proposed drill sites set back 300 feet from the Lake. After a six-year process, including 72 stakeholder groups and nearly a dozen other agencies, BLM released a 425-page environmental assessment (EA). "An environmental assessment is a preliminary report prepared by an agency to determine if an [environmental impact statement] is required by [the National Environmental Protection Act]." *Missouri ex rel. Bailey v. U.S. Dep't of Interior, Bureau of Reclamation*, 73 F.4th 570, 580 (8th Cir. 2023), *discussing* **42 U.S.C. §§ 4321-47** (detailing the requirements of an EA). "Federal regulations provide that an environmental assessment shall: '[b]riefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact.'" *Id.*, *quoting* **40 C.F.R. § 1508.9(a)(1)**. After assessing potential adverse impacts to the Lake and the public, the EA concluded with a

---

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota, adopting the report and recommendations of the Honorable Charles S. Miller, Jr., United States Magistrate Judge for the District of North Dakota.

finding of no significant impact (FONSI). In March 2017, after issuing the FONSI, BLM granted eight of eleven requested applications, requiring the drill sites to be 600 feet from the Lake and mandating that, for its operating equipment, Slawson use a separate facilities-pad more than a half mile from the Lake.

In 2012, MHA passed a resolution that all drilling operations must be set back at least a half mile from Lake Sakakawea (but allowing MHA to grant variances). *See* **24 C.F.R. § 1003.4** ("Tribal resolution means the formal manner in which the tribal government expresses its legislative will in accordance with its organic documents . . . ."). In February 2017—after a long dispute about whether Slawson had to obtain the setback variance—MHA passed another resolution establishing a new setback law: "In no event shall a setback of less than 1000 feet be allowed."

A month after the new setback law, BLM approved Slawson's applications. MHA appealed the approval within BLM. Ultimately, the Director of the Department of the Interior's Office of Hearings and Appeals ruled that the appeals had no merit and that BLM's approval of Slawson's applications complied with its legal requirements.

MHA then filed this case against BLM, raising two arguments: (1) that BLM's acts were arbitrary and capricious by precluding MHA from further developing the record about the threat the Project posed to the MHA's health and welfare; and (2) that BLM's approval of the Project was arbitrary and capricious due to an insufficient record. Slawson intervened. The district court granted summary judgment to BLM and Slawson, dismissing the case with prejudice. MHA appeals.

This court reviews de novo a grant of summary judgment. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Id.* (citations omitted).

## II.

"[J]udicial review of administrative decisions is governed by the Administrative Procedure Act." ***El Dorado Chem. Co. v. EPA***, 763 F.3d 950, 955 (8th Cir. 2014); *see* **5 U.S.C. § 706** ("To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."). Under the APA, review of an agency decision is limited. This standard of review gives "agency decisions a high degree of deference." ***Sierra Club v. EPA***, 252 F.3d 943, 947 (8th Cir. 2001) (citations omitted). The reviewing court decides whether the agency's decision was "based on consideration of the relevant factors and whether there has been a clear error of judgment." ***Voyageurs Nat'l Park Ass'n v. Norton***, 381 F.3d 759, 763 (8th Cir. 2004), *quoting **Citizens to Preserve Overton Park, Inc. v. Volpe***, 401 U.S. 402, 416 (1971). "If an agency's determination is supportable on any rational basis," then a reviewing court "must uphold it." ***Org. for Competitive Mkts. v. U.S. Dep't of Agric.***, 912 F.3d 455, 459 (8th Cir. 2018), *citing **Voyageurs Nat'l Park Ass'n***, 381 F.3d at 763.

This court should set aside agency action only if "arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law." ***Voyageurs Nat'l Park Ass'n***, 381 F.3d at 763, *quoting* **5 U.S.C. § 706(2)(A)**; *cf. **United States v. Texas***, 599 U.S. 670, 694-704 (2023) (Gorsuch, J., concurring) (discussing the limits of the "judicial Power" when setting aside agency action under § 706).

Arbitrary and capricious review, at its core, measures if an agency action was irrational. *See **Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.***, 463 U.S. 29, 43 (1983), *quoting **Burlington Truck Lines v. United States***, 371 U.S. 156, 168 (1962) ("the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"). "Federal administrative agencies are required to engage in 'reasoned decisionmaking.'" ***Michigan v. EPA***, 576 U.S. 743, 750

-4-

(2015), *quoting **Allentown Mack Sales & Serv., Inc. v. NLRB***, 522 U.S. 359, 374 (1998). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." ***Id.*** Agency action is unlawful if it fails to consider the relevant factors. ***Id.***, *quoting **State Farm***, 463 U.S. at 43 ("agency action is lawful only if it rests 'on a consideration of the relevant factors.'"). Relevant factors are generally determined by Congress. *See **N. States Power Co. v. United States***, 73 F.3d 764, 766 (8th Cir. 1996), *citing **Staples v. United States***, 511 U.S. 600, 605 (1994) ("Our analysis starts, and in this case ends, with the statutes themselves.").

This court has held agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

***Missouri ex rel. Bailey***, 73 F.4th at 577-78, *quoting **Cent. S.D. Co-op Grazing Dist. v. Sec'y of U.S. Dep't of Agric.***, 266 F.3d 889, 894 (8th Cir. 2001), *quoting **State Farm***, 463 U.S. at 43. Another way "an agency can act arbitrarily and capriciously is by 'fail[ing] to consider [an] important aspect of [a] problem' because it misunderstands 'the full scope of [its] discretion.'" ***Red River Valley Sugarbeet Growers Ass'n v. Regan***, 85 F.4th 881, 887 (8th Cir. 2023), *quoting **Dep't of Homeland Sec. v. Regents of the Univ. of Cal.***, 140 S. Ct. 1891, 1911 (2020), *quoting **State Farm***, 463 U.S. at 43. Further, courts must evaluate if an agency is acting within its own sphere of expertise. *See **Mausolf v. Babbitt***, 125 F.3d 661, 669 (8th Cir. 1997), *quoting **State Farm***, 463 U.S. at 43 ("Whether an agency's action is arbitrary and capricious depends on whether 'the agency has ...… offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"); *cf. **West Virginia v. EPA***, 142 S. Ct. 2587, 2623 (2022) (Gorsuch, J., concurring) (discussing the major questions doctrine, "skepticism may

be merited when there is a mismatch between an agency's challenged action and its congressionally assigned mission and expertise.").

On appeal, MHA contends BLM was arbitrary and capricious by (1) approving the Project on a record with insufficient evidence of any threat to MHA's health or welfare, and (2) precluding MHA from further developing the record as to any threat to MHA's health or welfare, in violation of due process. MHA claims, for both issues, further evidence is required because it could establish the relevant factor of tribal jurisdiction over the Project.

III.

Indian tribes are "separate sovereigns pre-existing the Constitution." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014); *see Soaring Eagle Casino & Resort v. NLRB*, 791 F.3d 648, 666 n.11 (6th Cir. 2015) (explaining that in disputes between an Indian tribe and the federal government the role of the courts is to "determine the balance of power between a silent greater sovereign and the lesser sovereign, not the balance of power between two sovereigns of similar status attempting to assert jurisdiction over the same conduct."). Yet, Congress has "plenary and exclusive" power to legislate about them. *United States v. Lara*, 541 U.S. 193, 200 (2004). "'[U]ntil Congress acts, the tribes retain' their historic sovereign authority." *Bay Mills Indian Cmty*, 572 U.S. at 788, *quoting United States v. Wheeler*, 435 U.S. 313, 323 (1978). *Cf. Haaland v. Brackeen*, 599 U.S. 255, 271-75 (2023) (grappling with the scope of "Congress's authority to legislate with respect to Indians." "It is plenary within its sphere, but even a sizeable sphere has borders."). "Due to their incorporation into the United States, however, the sovereignty that Indian tribes retain is of a unique and limited character." *United States v. Cooley*, 141 S. Ct. 1638, 1642 (2021), *citing Wheeler*, 435 U.S. at 323.

It is a "general proposition" that MHA's inherent sovereign powers as an Indian tribe do not extend to the civil activities of non-Indians on fee simple lands. *See Montana v. United States*, 450 U.S. 544, 565 (1981). There are "two important

-6-

exceptions" to this general proposition. ***Cooley***, 141 S. Ct. at 1643. The second exception is relevant here: A "tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the *health or welfare of the tribe*." ***Montana***, 450 U.S. at 566. (emphasis added). "Although the issue in the *Montana* case was about tribal regulatory authority over nonmember fee land within the reservation . . . *Montana*'s analytic framework now sets the outer limits of tribal civil jurisdiction . . . ." ***Atty's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Miss. in Iowa***, 609 F.3d 927, 936 (8th Cir. 2010).

MHA claims it has the power to enforce its law against Slawson, by way of the BLM permitting process, under *Montana*'s second exception for regulating the "health or welfare of the tribe." ***Montana***, 450 U.S. at 566. When BLM approved the Project, it said that "[i]t is the responsibility of the operator to obtain all necessary permits, and to comply with all applicable . . . tribal laws." BLM did not, however, conduct a jurisdictional analysis under *Montana*. APA review does not allow this court to address issues that were not the basis for the agency's decision, such as the alleged threat posed to MHA's water source as justification for tribal jurisdiction over Slawson's Project. It is a "'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" ***Regents***, 140 S. Ct. at 1907, *quoting* ***Michigan***, 576 U.S. at 758. The agency's "action must be measured by what [it] did, not by what it might have done." ***Michigan***, 576 U.S. at 758, *quoting* ***SEC v. Chenery Corp.***, 318 U.S. 80, 93-94 (1943). Because BLM did not evaluate MHA's setback law, this court cannot conduct a *Montana* analysis of it.

Further production of evidence is not required because tribal jurisdiction was not a relevant factor to the approval of the application. This court "conclude[s] that there is sound basis for adhering to our practice of declining to require reopening of the record, except in the most extraordinary circumstances." ***Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.***, 419 U.S. 281, 296 (1974).

For BLM's approval of the Project to be arbitrary and capricious, the agency must have failed to rely on the relevant factors, failed to consider an important aspect of the problem, or otherwise not engaged in reasoned decisionmaking in a manner not supportable by a rational basis. *See Missouri ex rel. Bailey*, 73 F.4th at 577-78.

The relevant factors for considering applications start with Congressional statute—the Mineral Leasing Act of 1920 (as amended by the Federal Onshore Oil and Gas Leasing Reform Act of 1987), 30 U.S.C. §§ 181-237. *Cf. Staples*, 511 U.S. at 605 ("The language of the statute, the starting place in our inquiry . . . ."). The Mineral Leasing Act is silent and does not direct BLM to evaluate a lesser sovereign's jurisdiction. *See* **30 U.S.C. § 226** (addressing requirements for applications). BLM need not "take explicit account of public policies that derive from federal statutes other than the agency's enabling [a]ct." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 646 (1990). The Department of the Interior, therefore, has the discretion to determine which factors are relevant. *See id.*, at 647-48 (recognizing agency deference in identifying relevant factors); *Texas Mun. Power Agency v. EPA*, 89 F.3d 858, 869 (D.C. Cir. 1996) (citing *Pension Benefit* for this proposition); *see also* Cass Sunstein and Adrian Vermeule, **Law and Leviathan: Redeeming the Administrative State** 109-10 (2020), *citing Pension Benefit Guar.*, 496 U.S. at 646 ("The Court has generally said, quite sensibly, that if Congress has clearly ruled factors in or out, agencies must respect that decision, but that if Congress has been silent or ambiguous, agencies have discretion to decide which factors are relevant.").

The Department of the Interior's regulations do not direct BLM to evaluate a lesser sovereign's jurisdiction. *See* **43 C.F.R. § 3162.3-1, § 3161.2** (describing provisions for protection of natural resources and environment); **§ 3162.5-1(a)** (requiring environmental assessment). Instead, the permit holder has the burden to "comply with applicable laws and regulations." **43 C.F.R. § 3162.1(a)**. *See* **§ 3162.5-1(c)** ("An operator's compliance with the requirements of the regulations in this part shall not relieve the operator of the obligation to comply with other

applicable laws and regulations."). Further, BLM is acting within its sphere of expertise, approving drilling applications. *See Mausolf*, 125 F.3d at 669. BLM's view that it is Slawson's responsibility to work within shifting tribal laws is not so implausible that it could not be a product of agency expertise on how to best handle this situation. *Id.* BLM evaluated all relevant factors. MHA's power to enforce its setback law was not one of them.

BLM did not fail to consider an important aspect of the problem. BLM instead placed the burden on Slawson to determine tribal jurisdiction and to comply with applicable tribal law. There are many rational bases for this determination—i.e., administrative efficiency, leaving to MHA and Slawson the important issue of tribal sovereignty, and MHA's discretion not to enforce its setback laws. Before its blanket 1000-foot setback law, MHA had a half-mile setback law allowing for variances that were "generally all . . . approved." Moreover, if an agency were required to consider eleventh-hour change in tribal laws for a project nearing approval, then agency action could stall indefinitely if it were about reservation lands held in fee simple by non-Indians—contrary to *Montana*'s general proposition that tribal authority does not extend to fee simple lands. *See Montana*, 450 U.S. 565.

BLM's explanation for its consistent refusal to evaluate MHA's setback law was not a prohibited post hoc rationalization. "Mere[] 'post hoc' rationalizations . . . have traditionally been found to be an inadequate basis for review." *Overton Park*, 401 U.S. at 419, *citing Burlington Truck Lines*, 371 U.S. 168-69. "The prohibition on post hoc rationalization applies only when the agency proceeds by" elaborating "on its original reasons for taking action." *Biden v. Texas*, 597 U.S. 785, 788 (2022), *citing Regents*, 140 S. Ct. at 1908. The applicability of MHA's setback law was not an original reason for approving the applications because the setback law was not a relevant factor to the approval. This court declines to adopt the novel position that an agency must explain not evaluating a non-relevant factor, which is a rational decision.

MHA claims the federal government neglected its trust responsibilities by failing to give effect to tribal law. "Under the General Allotment Act of 1887, 24 Stat. 388, many Indian lands were divided and allotted to individual Indians but were held in trust for their benefit by the federal government." *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1135 (8th Cir. 2019), *citing Upper Skagit Indian Tribe v. Lundgren*, 138 S. Ct. 1649, 1652-53 (2018). MHA argues that the federal government, as trustee, owes them certain trust responsibilities. True, a "trust responsibility of the federal government includes protecting tribal sovereignty." *Davis v. Muellar*, 643 F.2d 521, 525 (8th Cir. 1981). BLM placed the responsibility on Slawson to comply with tribal law without impeding MHA's ability as a sovereign to try to enforce its laws. BLM's decision not to evaluate tribal law does not impact tribal sovereignty.

MHA argues the record is insufficient to conduct a thorough *Montana* analysis—a point BLM agrees with, though Slawson does not. However, the *Montana* analysis is not before this court in this APA review. Because a *Montana* analysis was not a relevant factor to the approvals, the record is sufficient for BLM's approvals of the applications. The only deficiency in the EA that MHA asserts is the lack of evidence for a *Montana* analysis. *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 553 (1978) (explaining that issues must be raised before an agency so that the agency may address the concerns) ("Not only did the record before the agency give every indication that the project was actually needed, but also there was nothing before the Board to indicate to the contrary."). Even without a jurisdictional analysis, the record here was sufficient for BLM's approval of the applications.

MHA claims the record is underdeveloped because it does not assess the threat to their drinking water. To the contrary, the EA discusses the Lake as MHA's sole source of drinking water and identifies no adverse impacts due to mitigation measures. BLM consulted with agencies and stakeholders that oversee MHA's water system. Ultimately, BLM made its decision on a record gathered over six years—with a 425-page EA after input from 72 stakeholder groups and nearly a

dozen other agencies. Based on the EA, which found no significant impact, BLM required the Project be setback several hundred feet further from the Lake than Slawson requested and approved only eight of eleven applications.

BLM's approval of the Project based on the record was not arbitrary or capricious because it met the statutory and regulatory requirements—reasoned decisionmaking.

IV.

MHA contends BLM improperly precluded it from developing a sufficient record on the relevant issues by denying MHA an evidentiary hearing. "Required procedures [under the Due Process clause] may vary according to the interests at stake, 'but [t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Bus. Commc'ns, Inc. v. U.S. Dep't of Educ.*, 739 F.3d 374, 380 (8th Cir. 2013), *quoting Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). To require further development of the record, MHA must "provide adequate justification for its failure to present [the additional] materials to the agency during its decision-making process." *Newton County Wildlife Ass'n v. Rogers*, 141 F.3d 803, 808 (8th Cir. 1998), *citing Vermont Yankee*, 435 U.S. at 553-54.

MHA claims it was denied the opportunity to submit relevant evidence and to supplement the record with "a thorough hearing of setback requirements for oil and gas development around Lake Sakakawea." MHA believes this would develop more information about its jurisdiction over the Project under *Montana*. "A hearing is necessary only where there is a material issue of fact requiring resolution through the introduction of testimony and other evidence. In the absence of such an issue, no hearing is required." *Orion Rsrvs. Ltd. P'ship v. Salazar*, 553 F.3d 697, 708 (D.C. Cir. 2009), *quoting KernCo Drilling Co.*, 71 I.B.L.A. 53, 56 (1983); *see* **43 C.F.R. § 4.415(a)** (explaining the requirements for obtaining an evidentiary hearing). Due process may be satisfied without an administrative hearing if MHA

had adequate "opportunities to submit documentary and other evidence to BLM . . . ." *Salazar*, 553 F.3d at 708, *quoting* **Timothy J. Bottoms**, 150 I.B.L.A. 200, 216 (1999). Because there is no dispute of material fact and MHA had adequate opportunities to submit evidence, MHA is not entitled to an evidentiary hearing.[2] MHA is not due any more process than the Constitution, laws, and regulations require. *See* **Mathews**, 424 U.S. at 334 ("resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected.").

Here, MHA had (and used) multiple opportunities to submit evidence and present arguments to BLM during the six-year process evaluating the Project. Before approving the Project, BLM afforded MHA with adequate process—five face-to-face meetings with Tribal representatives, two additional phone conferences, and several written communications. After the approval of the Project, MHA had multiple stages of administrative appeals to present its claims.

MHA's jurisdiction over Slawson's Project is an open question, which is not before this court because it was not a relevant factor to the Project's approval. MHA did not plead a claim asserting jurisdiction over Slawson based on a threat to "the health or welfare of the tribe" due to Slawson's drilling near its primary drinking-water source on fee land within the exterior boundaries of the reservation. *See* **Montana**, 450 U.S. at 566. In this case, and on this record, MHA has received all process required by the Constitution, laws, and required by agency regulation. Due

---

[2]MHA argues *Montana*'s applicability is a disputed issue of material fact. As discussed, *Montana*'s applicability was not a relevant factor to BLM's approval of the Project.

process does not require an evidentiary hearing here.  BLM met the requirements to approve the Project. [3]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

[3]Slawson moved to file a supplemental brief with concerns about MHA's Reply Brief.  That motion is denied as this court has thoroughly reviewed all parties' stated positions.