# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-3723
_____

Organization for Competitive Markets, et al.

*Petitioner*s

v.

U.S. Department of Agriculture, et al.

*Respondent*s
_____

Petition for Review of an Order of the
Department of Agriculture
_____

Submitted: September 26, 2018
Filed: December 21, 2018
_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.
_____

LOKEN, Circuit Judge.

The Organization for Competitive Markets and three of its members petition for review of 2017 United States Department of Agriculture ("USDA") orders withdrawing an interim final rule and two proposed regulations promulgated under the Packers and Stockyards Act ("PSA"), 7 U.S.C. §§ 181 *et seq.* We deny the petition for review.

# I. Background.

The PSA was enacted in 1921 to comprehensively regulate the "Big Five" meat packers, stockyards they controlled, and commission men and dealers who profited from their nationwide monopoly. See Stafford v. Wallace, 258 U.S. 495, 514-16 (1922) (rejecting a Commerce Clause challenge to the PSA). Modeled after the Interstate Commerce Act of 1887 and the Federal Trade Commission Act of 1913, two core PSA provisions make it unlawful for any packer, swine contractor, or live poultry dealer to "use any unfair, unjustly discriminatory, or deceptive practice" or "give any undue or unreasonable preference or advantage to any particular person or locality in any respect." PSA § 202(a) and (b), codified at 7 U.S.C. § 192(a) and (b).[1]

Because "[r]ead literally, [these terms] establish no standard at all," at least six circuits, including this court, have concluded that these provisions concern only those business dealings that have an actual or potential adverse effect on competition, an interpretation based on "their statutory and common-law antecedents, which were known well by the Members of the Congress that passed the [PSA]." Wheeler v. Pilgrim's Pride Corp., 591 F.3d 355, 364-65 (5th Cir. 2009) (en banc) (Jones, J., concurring); accord Been v. O.K. Indus., Inc., 495 F.3d 1217, 1228-29 (10th Cir. 2007); London v. Fieldale Farms Corp., 410 F.3d 1295, 1303-04 (11th Cir. 2005); IBP, Inc. v. Glickman, 187 F.3d 974, 977 (8th Cir. 1999); DeJong Packaging Co. v. USDA, 618 F.2d 1329, 1336-37 (9th Cir. 1980); Pac. Trading Co. v. Wilson & Co., Inc., 547 F.2d 367, 369-70 (7th Cir. 1976). Notably, Congress has amended the PSA at least seven times without making changes that would affect this judicial interpretation. Wheeler, 591 F.3d at 361. Though the USDA has consistently construed these provisions as not *requiring* proof of anti-competitive effect, courts

---

[1] 7 U.S.C. § 192 also includes five specific prohibitions, and broad prohibitions that apply to stockyards and stockyard dealers are found in 7 U.S.C. § 213. But subsections 192(a) and (b) are the focus of this appeal.

have not given its position <u>Chevron</u> deference. <u>See</u> <u>Wheeler</u>, 591 F.3d at 362; <u>Been</u>, 495 F.3d at 1227; <u>London</u>, 410 F.3d at 1304.

On December 20, 2016 (the timing is significant), USDA published an interim final rule -- known as the Farmer Fair Practices Rules -- declaring that a finding of adverse effect on competition "is not necessary in all cases. Certain conduct or action can be found to violate sections 202(a) and/or (b) of the Act without a finding of harm or likely harm to competition." 81 Fed. Reg. at 92,566, 92,594, to be codified as 9 C.F.R. § 201.3(a). USDA explained that its longstanding interpretation of the PSA was correct but had been rejected by courts of appeals that misconstrued the statute. "To the extent that these courts failed to defer to USDA's interpretation of the statute because that interpretation had not previously been enshrined in a regulation, this new regulation may constitute a material change in circumstances that warrants judicial reexamination of the issue." <u>Id.</u> at 92,568 (footnotes omitted). USDA declared the interim final rule would take effect on February 21, 2017, and invited written comments before that date.

The same day, USDA published two proposed amendments to its PSA regulations: proposed 9 C.F.R. § 201.210 set forth a long list of "per se" violations of section 202(a), that is, conduct or action that is "unfair," "unjustly discriminatory," or a "deceptive" practice "regardless of whether the conduct or action harms or is likely to harm competition." Proposed 9 C.F.R. § 201.211 listed six non-exclusive criteria the Secretary will consider in determining whether section 202(b) has been violated, one of which is whether the conduct or action "harms or is likely to harm competition." 81 Fed. Reg. 92,703, 92,722-23.

On February 7, 2017, citing a "Regulatory Freeze Pending Review" issued by the President's Chief of Staff to the heads of all executive departments, USDA postponed the interim final rule's effective date to April 22, 2017, and invited written comments. 82 Fed. Reg. 9,489 (Feb. 7, 2017). On April 12, noting "the significant

-3-

public interest in this rule," USDA further postponed the rule's effective date to October 19, 2017, and issued a notice of proposed rulemaking seeking comments regarding four alternative dispositions. 82 Fed. Reg. 17,531 and 17,594 (Apr. 12, 2017). On October 18, USDA withdrew the interim final rule and published notice "that after review and careful consideration of the public comments received, [USDA] will take no further action" on proposed 9 C.F.R. §§ 201.210 and 201.211. 82 Fed. Reg. at 48,594 and 48,603 (Oct. 18, 2018). Petitioners argue that USDA's withdrawal of the interim final rule and failure to promulgate the proposed regulations were arbitrary and capricious agency actions within the meaning of 5 U.S.C. § 706(2)(A) and a continuing failure to comply with a mandate in the Food, Conservation, and Energy Act of 2008[2] that constitutes unlawful withholding of agency action under 5 U.S.C. § 706(1).

## II. Discussion.

Viewed from a political scientist's perspective, this landscape is rather easy to describe. In December 2016, the outgoing USDA administrators left their successors a time bomb -- published proposed agency actions promulgating USDA's longstanding interpretation of the PSA that would increase its regulatory authority, an interpretation that had been consistently rejected by numerous courts of appeals for over 75 years, without congressional intervention. Not surprisingly, USDA's incoming Secretary, acting on a promise to reduce regulation, took action to postpone and then cancel these proposals. In ruling on this petition for review, our task is limited to applying established, neutral legal principles to determine whether that was valid agency action. Whether prior court of appeals decisions have correctly interpreted the PSA is a task for the Supreme Court, or for each of those courts acting

---

[2]Pub. L. No. 110-246, § 11006(1), 122 Stat. 2120.

en banc.  Whether the PSA should be amended to reflect USDA's view of what it *ought* to provide is the task of Congress.[3]

**A.  The Arbitrary and Capricious Issue.**  The Administrative Procedure Act provides for judicial review of most agency actions.  5 U.S.C. §§ 701-706.  The parties agree those provisions apply to the USDA actions at issue.  Section 706(2)(A) provides that a reviewing court shall "(2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  This is a highly deferential standard: "Under what we have called this 'narrow' standard of review, we insist that an agency 'examine the relevant data and articulate a satisfactory explanation for its action.'" FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009), quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  "If an agency's determination is supportable on any rational basis, we must uphold it." Voyageurs Nat'l Park Ass'n v. Norton, 381 F.3d 759, 763 (8th Cir. 2004). This standard applies when an agency revokes an extant regulation.

In this case, USDA published a proposed interim final rule and two regulations that reflected its prior enforcement policy but enshrined that policy in regulations, a change of course that had not been subjected to full notice and comment rulemaking. The proposals never took effect.  Rather, in the actions at issue, USDA withdrew the proposed regulatory change while leaving its prior enforcement policy unaffected. Judicial review of this kind of action "present[s] questions that are delicate, subtle, and complex." Fox Television, 556 U.S. at 536 (Kennedy, J., concurring).  "The question in each case is whether the agency's reasons for the change [or decision not

---

[3]For relief, petitioners ask us to "order the Department to issue" the rules and regulations it withdrew.  This reflects a distressing disregard of the separation of powers mandated by the Constitution.  Article III grants us the "judicial Power" to decide "Cases" and "Controversies," not the legislative power to rewrite the PSA or the executive power to promulgate interpretive regulations.

to change], when viewed in light of the data available to it, and when informed by the experience and expertise of the agency, suffice to demonstrate that the new policy rests upon principles that are rational, neutral, and in accord with the agency's proper understanding of its authority." Id. In general, "an agency's discretion is surely at its height when it chooses *not* to act." Williams Nat. Gas Co. v. FERC, 872 F.2d 438, 450 (D.C. Cir. 1989) (emphasis in original). But "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." Motor Vehicle Mfrs., 463 U.S. at 42.

In its published comment withdrawing the interim final rule, USDA reviewed in detail the public comments for and against the rule[4] and offered two main justifications for its decision to withdraw. First, surveying at length prior decisions of seven courts of appeals regarding the need to show harm to competition, 82 Fed. Reg. at 48,596-98, USDA concluded that the interim final rule would conflict with decisions in at least four circuits, and that "a regulation conflicting with relevant Circuit precedent will inevitably lead to more litigation in the livestock and poultry industries [which] serves neither the interests of the livestock and poultry industries nor [USDA]." Id. at 48,597. Second, USDA concluded there was no "good cause" that warranted issuing the interim final rule without additional notice and public comment, because of the six-year delay between the initial comment period and publication of an interim final rule that was not contained in the 2010 proposal; the substantial public interest in the proposal; and "no evidence that the public would suffer harm following the normal notice and comment procedure." Id. 48,598-99.

---

[4]A large majority of the 1,951 comments submitted in response to the April 12, 2017 proposed rule favored withdrawal of the interim final rule. See 82 Fed. Reg. at 48,595-96.

In the other action at issue, USDA explained that it was taking no further action on proposed regulations 9 C.F.R. §§ 201.210 and 201.211 because:

> In the past, [USDA] has approached the elimination of specific unfair and deceptive practices on a case-by-case basis. Continuing this approach will better foster market-driven innovation and evolution, and is consistent with the obligation to promote regulatory predictability, reduce regulatory uncertainty, and identify and use the most innovative and least burdensome tools for achieving regulatory ends.

Id. at 48,604.

Petitioners argue that USDA's assessment that circuit courts would refuse to defer to the withdrawn proposed regulations "is flawed" because, in their view, the court decisions in Wheeler and London misconstrued the PSA. But the merits of the underlying debate are not the issue. An agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." Fox Television, 556 U.S. at 515. Here, USDA's "new policy" was to return to the enforcement policy it had pursued for decades. Thus, it is self-evident "that the new policy is permissible under the statute." USDA's conclusion that the interim final rule and proposed regulations would result in protracted litigation that "serves neither the interests of the livestock and poultry industries" nor USDA is a rational reason *not* to adopt a proposed change of course.

Petitioners further argue that USDA "was legally correct" in December 2016 when it determined it could publish the interim final rule without invoking the APA's "good cause" exception to notice and comment rulemaking. See 5 U.S.C. § 553(b), ©. Again, this attack on the merits of the agency's decision that more public notice and comment was needed is not the issue. It is certainly not unprecedented for an

agency to rescind an "interim final rule" because it determines that additional public comment is needed. See Mortg. Inv'rs Corp. of Ohio v. Gober, 220 F.3d 1375, 1377 (Fed. Cir. 2000). This kind of procedural determination by an agency is entitled to significant weight, particularly here where the initial proposals in 2010 drew strong adverse public comment that caused the agency not to take action until the final days of a departing administration. Petitioners assert that USDA's justification "makes no sense" because courts are "reluctant to vacate agency action on the basis of staleness challenges." That is no doubt true given judicial deference to agency procedural decisions. But more to the point, petitioners cite no case holding that an agency's decision to seek updated public comment was arbitrary and capricious.

An agency's decision to retain the status quo is more easily defensible than a shift in policy would be. Here, USDA explained that it was withdrawing the interim final rule and taking no further action on the proposed regulations because the proposed regulatory change of course would generate protracted litigation, adopt vague and ambiguous terms, and might prevent innovation and foster vertical integration that would hinder new market entrants. 82 Fed. Reg. at 48,603-04. These are legitimate regulatory and substantive concerns. We cannot say that the USDA actions at issue were arbitrary and capricious. We deny the petition to review under 5 U.S.C. § 706(2)(A).

**B. The 5 U.S.C. § 706(1) Issue.** Petitioners contend that the actions at issue reflect a continuing failure to comply with a directive in Title XI of the Food, Conservation and Energy Act of 2008 that USDA promulgate, within two years, regulations to establish criteria for enforcing the "undue or unreasonable preference or advantage" provision in § 202(b) of the PSA. Therefore, petitioners argue, the Administrative Procedure Act commands that we "shall" enter an order to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

Review of this contention requires a closer look at historical events than petitioners' briefs provided. The 2008 Farm Bill mandate called for regulations covering a number of subjects:

**SEC. 11006. REGULATIONS**

As soon as practicable, but not later than 2 years after the date of the enactment of this Act, the Secretary of Agriculture shall promulgate regulations with respect to the [PSA] to establish criteria that the Secretary will consider in determining -
(1) whether an undue or unreasonable preference or advantage has occurred in violation of such Act;
(2) whether a live poultry dealer has provided reasonable notice to poultry growers of any suspension of the delivery of birds under a poultry growing arrangement;
(3) when a requirement of additional capital investments over the life of a poultry growing arrangement or swine production contract constitutes a violation of such Act; and
(4) if a live poultry dealer or swine contractor has provided a reasonable period of time for a poultry grower or a swine production contract grower to remedy a breach of contract that could lead to termination of the . . . arrangement or . . . contract.

On June 22, 2010, four days after the two-year period, USDA promulgated proposed regulations addressing all four subjects. It also proposed regulations addressing additional "discretionary" subjects, including two of the three proposals at issue on this appeal -- proposed 9 C.F.R. § 201.3(c), stating that "Conduct can be found to violate section 202(a) and/or (b) of the Act without a finding of harm or likely harm to competition," and proposed § 201.210, listing examples of unfair practices that violate section 202(a) of the PSA. 75 Fed. Reg. 35,338, 35,351-54.

On December 9, 2011, USDA published a "final rule" adopting regulations on three of the four subjects addressed in the 2008 Farm Bill -- delivery of birds,

additional capital investments, and reasonable time to remedy a breach of contract. 76 Fed. Reg. 76,874. Those provisions can now be found at 9 C.F.R. §§ 201.215-.217. However, noting it had received over 61,000 comments, USDA announced it "opted not to finalize" some provisions, including proposed 9 C.F.R. §§ 201.3(c), 201.210, and 201.211, explaining that "[c]omments were sharply divided" with respect to these provisions. Id. at 76,875, 76,889. Thereafter, congressional appropriations acts for fiscal years 2012-2015 *precluded* USDA from finalizing these three proposed regulations. However, the appropriations acts for 2016 and 2017 did not include this limitation. See 81 Fed. Reg. 92,566, 92,567.

Courts that have considered the issue, including this court, have agreed that there is at least limited authority for courts of appeals to review whether agency action has been "unlawfully withheld or unreasonably delayed," the operative words in § 706(1) of the APA. In Forest Guardians v. Babbitt, the Tenth Circuit categorically declared: "when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act." 164 F.3d 1261, 1272 (10th Cir. 1998). However, an agency's mere failure to act is usually not a final agency action triggering judicial review, and the Supreme Court has declared that the APA does not "afford an implied grant of subject-matter jurisdiction." Califano v. Sanders, 430 U.S. 99, 105-06, 107 (1977). After surveying this jurisdictional landscape, the D.C. Circuit adopted a less categorical approach, concluding that a claim under § 706(1) should be reviewed as a petition for a writ of mandamus under the powers granted courts of appeals by the All Writs Act, 28 U.S.C. § 1651(a), to "issue all writs necessary or appropriate in aid of their respective jurisdictions." See Telecomms. Research & Action Ctr. v. FCC ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984). Most circuits have adopted the mandamus approach to agency delay issues; we assumed it was jurisdictionally appropriate in Irshad v. Johnson, 754 F.3d 604, 607-08 (8th Cir. 2014).

Of controlling significance is the Supreme Court's unanimous decision in Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63 (2004). Without explicitly discussing the APA jurisdictional issue, the Court agreed that a claim will lie under § 706(1) to redress an agency's failure to act, but observed that § 706(1) authorizes courts to "carr[y] forward the traditional practice prior to its passage, when judicial review was achieved through use of the so-called prerogative writs -- principally writs of mandamus under the All Writs Act." Id. at 63. The Court concluded that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." Id. at 64 (emphasis in original). Thus, whether petitioners' claim is reviewed under § 706(1) or as a petition for a writ of mandamus under the All Writs Act, their argument that this court *must* compel agency action fails.[5] "The issuance of a writ of mandamus is an extraordinary remedy reserved for extraordinary situations." In re MidAmerican Energy Co., 286 F.3d 483, 486 (8th Cir. 2002); see Hvass v. Graven, 257 F.2d 1, 6 (8th Cir.), cert. denied, 358 U.S. 835 (1958). We conclude this is not an extraordinary situation.

In the first place, we cannot conclude that USDA has "unlawfully withheld" action by failing to comply with an absolute congressional deadline in Section 11006 of the 2008 Farm Bill. Congress directed USDA to "promulgate regulations." That

_____

[5]We have serious doubt whether the Fourth Circuit correctly interpreted the Supreme Court's decision in Southern Utah when it held that § 706(1) "mandates the award of injunctive relief when a plaintiff succeeds in challenging unlawfully withheld agency action." South Carolina v. United States, 907 F.3d 742, 757-58 (4th Cir. 2018). We question whether Congress in § 706(1) intended to foreclose all discretion that is inherent in the judiciary's equity jurisdiction. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982) ("The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances."). But we need not decide that question because, as explained below, the issue in this case is whether USDA has "unreasonably delayed" agency action, not whether action was "unlawfully withheld."

directive is subject to different interpretations. With regard to administrative agencies, Black's Law Dictionary defines "promulgate" as "to carry out the formal process of rulemaking by publishing the proposed regulation, inviting public comments, and approving or rejecting the proposal." (9th ed. 2009)

In response, USDA proposed rules responsive to all four subjects Congress identified. On subjects of this complexity, promulgating proposed regulations in the two years specified is likely all Congress expected. It would be unreasonable to assume that Congress expected final regulations within two years, regardless of the public comments. USDA held public meetings and workshops and considered 61,000 public comments. 81 Fed. Reg. at 92,566-67. It then issued final regulations on three of the four subjects in December 2011. It did not finalize action on proposed 9 C.F.R. § 201.211 because public comment confirmed it was controversial. Compare Oil, Chem., & Atomic Workers Union v. OSHA, 145 F.3d 120, 124 (3d Cir. 1998) (denying petition to compel agency action where agency had been "far from idle" in addressing the action allegedly delayed). Arguably, this was full compliance with the 2008 Farm Bill. That Congress attached appropriations riders for the next four years precluding USDA from finalizing its proposed regulation on the fourth subject is powerful if not conclusive evidence that USDA's failure to complete a controversial part of the task was not "agency action unlawfully withheld or unreasonably delayed." See Irshad, 754 F.3d at 607-08 (denying a writ of mandamus to compel an agency to make a hasty decision "based upon a high-level analysis of complex, sensitive factors").

This is not a case where an agency has failed to take action in the face of multiple unambiguous commands. USDA postponed the interim final rule, solicited additional public comment, and then took the alternative final action urged in a

substantial majority of the comments, giving rational reasons for its decision to withdraw a proposed regulatory change and to adhere to its longstanding practice.[6]

We are wary of becoming the ultimate monitor of Congressionally set deadlines, as "courts are not charged with general guardianship against all potential mischief in the complicated tasks of government." FCC v. Pottsville Broad. Co., 309 U.S. 134, 146 (1940). Congress gave USDA an ambiguous directive in the 2008 Farm Bill. USDA made extensive efforts to comply, promulgating three final regulations and a proposed regulation on the fourth controversial subject it declined to finalize. Congress has demonstrated on-going interest in the issue, can determine that its directive has been unreasonably delayed, and take appropriate action. "[I]t must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts." Missouri, Kansas, & Texas Ry. Co. v. May, 194 U.S. 267, 270 (1904).

For these reasons, we deny the petition for review in its entirety.

_____

_____

[6]USDA has given assurance that it intends to issue regulations on the deferred issues in the near future, a fact that counsels against determining that the delay warrants a writ of mandamus at this time. Compare TRAC, 750 F.2d at 80, and Wellesley, Concord, & Norwood, Mass. v. FERC, 829 F.2d 275, 277 (1st Cir. 1987), with Pub. Citizen Health Research Grp. v. Chao, 314 F.3d 143, 151 (3d Cir. 2002), and In re Bluewater Network, 234 F.3d 1305, 1316 (D.C. Cir. 2000).